FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 MAY 26  PM 1: 57

STEPHAN HARRIS, CLERK
CHEYENNE

William L. Simpson (Wyo. Bar # 5-2189)
Burg, Simpson, Eldredge, Hersh & Jardine, P.C.
1135 14th Street
P.O. Box 490
Cody, WY 82414
bsimpson@skelaw.com
307-527-7891
Fax:  307-527-7897

ATTORNEYS FOR PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRI COUNTY TELEPHONE ASSOCIATION, INC. a Wyoming corporation, <br><br> Plaintiff, <br><br> v. <br><br> JOE CAMPBELL AND BARBARA CAMPBELL, individuals, and JOHN AND JANE DOES 1-10, <br><br> Defendants. | Docket No. 17-CV-89-F |

# COMPLAINT

Plaintiff, Tri County Telephone Association, Inc. ("TCT" or "Plaintiff"), by and through

counsel, BURG, SIMPSON, ELDREDGE, HERSH & JARDINE, P.C., for its Complaint in this matter

states and alleges as follows:

## PARTIES

1.      Tri County Telephone Association, Inc. is a Wyoming corporation with its principal place of business in Park County, Wyoming.

2.      Upon information and belief, Joe and Barbara Campbell are individuals residing in Hot Springs County, Wyoming.

3.      Upon information and belief, John and Jane Does 1-10 are individuals residing throughout the State of Wyoming.

## JURISDICTION AND VENUE

4.      TCT restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

5.      This is a civil action arising under the laws of the United States of America.

6.      This Court possesses jurisdiction over the federal claims under 28 U.S.C. § 1331.

7.      This Court possess jurisdiction over the non-federal claims under 28 U.S.C. § 1367(a). These claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

## GENERAL ALLEGATIONS

9.      TCT restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

10.    TCT is a telecommunications company based in Cody, Wyoming, which provides telephone, internet, and wireless services to customers in Wyoming and Montana.

11.    TCT was previously operated as a member-owned co-operative company. Beginning on January 1, 2015, TCT became a privately owned company.

12.    Defendant Joe Campbell was a member of the board of directors of TCT, as it operated as a co-operative, from February 24, 2003 until the co-operative's board was dissolved, effective January 1, 2015.

13.    Joe Campbell was the only director of TCT that opposed the sale of the co-operative.

14.    Following the sale of the co-operative, Joe and Barbara Campbell initiated a lawsuit on December 28, 2015 against the former co-operative, the newly private TCT, the investors and owners of TCT, the former board members of the co-operative, the former executive officers of the co-operative, the corporate attorneys for the co-operative, and certain other parties. That case is filed in the District Court for Park County, Wyoming under Case No. 28260 ("Campbell Class Action").

15.    The Campbell Class Action is styled as a class action, however, to date, a class has not been certified, and no additional plaintiffs have joined the suit.

16.    As a former director of the co-operative, Joe Campbell had access to certain information that at the time he received it was confidential, proprietary, or otherwise not public information.

17.    Joe Campbell was party to numerous agreements and policies, including a Director Confidentiality Policy, Non Disclosure Agreements, and corporate resolutions regarding Director

conduct, all of which created strict and binding confidentiality obligations for Joe Campbell that continued after his service on the board.

18.     Following termination of his service on the co-operative's board, Joe Campbell has communicated with individuals regarding information belonging to TCT which is proprietary, confidential or otherwise not public. Such individuals have been identified to include Barbara Campbell, Randy Lowe and other "John and Jane Does" to be determined.

19.     These identified individuals, as well as certain John and Jane Does, are believed to have access to proprietary, confidential, or otherwise not public information, and have engaged in improperly sharing, disclosing, publishing, and accessing the protected information, to the detriment of TCT.

20.     Although some of the operative facts may be similar, this case is wholly separate and distinct from the Campbell Class Action with respect to the issues and causes of action presented. This matter involves separate and distinct illegal and tortuous actions of Defendants. The subject matter of the Campbell Class Action relates to allegations in connection with the acquisition of TCT. The subject matter of this lawsuit instead focuses on the conduct of the Defendants occurring after Joe Campbell ceased to serve as director. Thus, as this case involves separate and distinct operative facts, its consolidation with the Campbell Class Action would be inappropriate and would likely add expense and cause undue delay, in violation of Rule 1 of both the Federal and Wyoming Rules of Civil Procedure.

### TCT'S FIRST CAUSE OF ACTION
### MISAPPROPRIATION OF TRADE SECRETS
### UNDER THE DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836

21.     TCT restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

22.     Following the termination of Joe Campbell's service on the co-operative's board, he was required, pursuant to official board action, to return his company issued laptop to TCT. TCT's staff was then to remove all of TCT's trade secrets from such laptop.

23.     Instead of complying with the board directive, Joe Campbell kept the company-issued laptop and TCT's trade secrets thereon, including TCT's trade secrets spanning his entire time as a board member for TCT.

24.     TCT's trade secrets are related to TCT's products and services, which are used in and intended for use in interstate commerce.

25.     TCT is the owner of these trade secrets. It is the only person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secrets are reposed.

26.     TCT's misappropriated trade secrets are various forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, tangible and/or intangible, that are stored, compiled, or memorialized physically, electronically, graphically, photographically, and/or in writing.

27.     TCT has taken reasonable measures to keep such information secret by using special employee and data protocols, including the requirement that each terminated board member return his or her laptop for removal of the trade secrets.

28.     TCT's trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. This is information that would significantly benefit TCT's competitors if they were to obtain it.

29.     Joe Campbell acquired TCT's trade secrets and knew or had reason to know he acquired TCT's trade secrets through improper means, i.e. by breach of a duty to maintain secrecy by not allowing TCT's staff to remove all of its trade secrets and later revealing a portion of the trade secrets to the public.

30.     Joe Campbell disclosed and used TCT's trade secrets without TCT's express or implied consent.

31.     At the time of the disclosure and use, Joe Campbell knew or had reason to know that the knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets and completely limit the use of the trade secrets.

32.     At the time of the disclosure and use, Barbara Campbell and John and Jane Does knew or had reason to know that the knowledge of the trade secrets was derived from or through a person, Joe Campbell, who owed a duty to maintain the secrecy of the trade secrets or completely limit the use of the trade secrets.

33.     Defendants caused substantial pecuniary loss to TCT and may have realized substantial pecuniary gain resulting from the misappropriation.

34.     TCT is entitled to damages for actual loss caused by the misappropriation and damages for unjust enrichment caused by the misappropriation not addressed in computing the aforementioned damages.

35.     In lieu of damages measured by other methods, the damages caused by the misappropriation may be measured by an imposition of liability for a reasonable royalty for Defendants' unauthorized disclosure or use of the trade secret.

36.     Due to Defendants' willful and malicious misappropriation, TCT is entitled to an award of punitive and exemplary damages, as well as attorneys' fees.

## TCT'S SECOND CAUSE OF ACTION
## INTENTIONAL OR TORTIOUS INTERFERENCE WITH A CONTRACT AND BUSINESS EXPECTANCY INVOLVING UNION BANK

37.     TCT restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

38.     TCT has an ongoing contractual relationship with MUFG Union Bank, N.A. ("Union Bank").

39.     TCT has an ongoing business expectancy with Union Bank.

40.     Defendants have knowledge of this contractual relationship and business expectancy. They have demonstrated this knowledge to the general public by publicizing the relationship and expectancy through their website and other means, including confidential documents

demonstrating the existence of a contractual relationship and business expectancy between TCT and Union Bank.

41.     The contractual relationship and business expectancy include a credit agreement with certain covenants governing TCT's use of cash on hand.

42.     Defendants, who are not parties to the credit agreement, have intentionally interfered with the credit agreement through their improper communications, publications, and sharing of non-public information, causing Union Bank to eliminate certain business expectancies related to the credit agreement, to the detriment of TCT.

43.     Specifically, once financial ratios and loan covenants are met as stated in the credit agreement, TCT would have had the freedom to invest available cash into non-collateralized investments.  In the past TCT has realized substantial revenue from the investment of this capital.  However, due specifically to the actions of the Defendants, the Defendants' improper sharing of information, statements regarding TCT, and wrongful publication and sharing of proprietary information, Union Bank has not allowed TCT to utilize its capital to its economic benefit.

44.     Defendants' intentional and/or tortuous conduct specifically caused this contractual relationship and business expectancy to be illegally harmed, damaged, and disrupted.

45.     Defendants are clearly aware of, and have knowledge of, TCT's relationship, and business expectancy, with Union Bank.  Additionally, Defendants have been made keenly aware of such, as Union Bank independently demanded removal of certain confidential documents from Defendants' public domain website.

46.     As the direct result of Defendants' improper communications, publications, and the sharing of non-public information, TCT has been irreparably, materially, and substantially harmed, damaged, and disrupted in an amount to be proven at trial, which exceeds the jurisdictional minimum of this Court.

## TCT'S THIRD CAUSE OF ACTION
## INTENTIONAL OR TORTIOUS INTERFERENCE WITH A PROSPECTIVE
## ECONOMIC ADVANTAGE AND BUSINESS EXPECTANCY CONCERNING LOST
## CODY DATA CENTER

47.     TCT restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

48.     TCT had a business expectancy and prospective economic advantage with a developer to undertake the construction and build out of a lucrative data center in Cody, and also separately had engaged in advanced negotiations with another company to be the data center's anchor tenant.

49.     While in advanced negotiations with both the developer and the anchor tenant, Defendants intentionally acted to prevent any such agreement from being entered into, souring the prospective economic advantage and disrupting the business expectancy.   Specifically, Defendants intentionally disseminated or otherwise implicated TCT in business practices and/or business dealings which were allegedly unethical, illegal, or otherwise improper, causing developer and the anchor tenant to terminate their relationships with TCT.

50.     Defendants had knowledge of this prospective economic advantage and business expectancy.

51.     Additionally, the potential for the Cody Data Center project was public information, was publicized by Forward Cody, a local Park County economic development agency, and was generally known to the public.

52.     The Cody Data Center, in addition to be being a profitable venture for TCT, would have also added jobs in Cody, and would have created an economic boost to the local Cody economy.

53.     Defendants, who were not a party to the prospective economic advantage or business expectancy, intentionally interfered with the prospective economic advantage and business expectancy, disrupting the prospective economic advantage and business expectancy and causing multiple parties to terminate the business expectancy and end TCT's prospective economic advantage derived from the Cody Data Center.

54.     As the direct result of Defendant's improper actions, TCT has been irreparably, materially, and substantially harmed, damaged, and disrupted in an amount to be proven at trial, which exceeds the jurisdictional minimum of this Court.

### TCT'S FOURTH CAUSE OF ACTION
### INTENTIONAL OR TORTIOUS INTERFERENCE WITH A CONTRACT AND BUSINESS EXPECTANCY WITH TCT CUSTOMERS

55.     Plaintiff restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

56.     TCT has an ongoing contractual relationship with customers, for which it provides telephone, internet, and wireless services.

57.    Many such TCT customers were customers prior to the termination of Joe Campbell's service on the co-operative's board. Joe Campbell has specific knowledge of such customers.

58.    TCT had an ongoing business expectancy with the customers that existed at the time Joe Campbell ceased to serve on TCT's board, as well as with new customers which TCT has added since.

59.    These contractual relationships and business expectancies are customer agreements, and comprise the foundation for TCT's ongoing business.

60.    Defendants, who are not a party to the customer agreements, have intentionally interfered with certain customer agreements through their improper communications, publications, and sharing of non-public information, causing customers to terminate their contractual agreements, disrupting TCT's business expectancies.

61.    As the direct result of Defendants' improper communications, publications, and the sharing of non-public information, TCT has been irreparably, materially, and substantially harmed, damaged, and disrupted in an amount to be proven at trial, which exceeds the jurisdictional minimum of this Court.

### TCT'S FIFTH CAUSE OF ACTION
### VIOLATION OF 18 U.S.C. § 1030(a)(2)(C)
### OF THE COMPUTER FRAUD AND ABUSE ACT

62.    TCT restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

63.     Joe Campbell intentionally accessed and continues to access the laptop computer without authorization and exceeding authorized access.

64.     Following dissolution of the cooperative's board of directors, Joe Campbell did not have authorization to access the computer while TCT trade secrets were still located thereon.

65.     Joe Campbell exceeded authorized access by accessing the computer while TCT trade secrets were still located thereon.

66.     Joe Campbell was required to return the computer to TCT for its removal process before he would be authorized to access the computer.

67.     In doing so, Joe Campbell thereby obtained information from a protected computer.

68.     The laptop computer is a protected computer because it was and is being used in or affecting interest commerce or communication.

69.     John and Jane Does conspired with the other Defendants to violate this portion of the Act.

70.     TCT suffered damage and loss and continues to suffer damage and loss caused by Defendants' violation of this portion of the Act.

71.     During any one-year period, the loss to TCT far exceeds $5,000.00 in value.

### TCT'S SIXTH CAUSE OF ACTION
### VIOLATION OF 18 U.S.C. § 1030(a)(4)
### OF THE COMPUTER FRAUD AND ABUSE ACT

72.     TCT restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

73. Joe Campbell knowingly and with intent to defraud, accessed and continues to access the laptop computer without authorization and exceeding authorized access and by other means or such conduct furthered his intended fraud to obtain anything of value.

74. Joe Campbell did not have authorization to access the computer while TCT trade secrets were still located thereon.

75. Joe Campbell exceeded authorized access by accessing the computer while TCT trade secrets were still located thereon.

76. Following dissolution of the cooperative's board of directors, Joe Campbell was required to return the computer to TCT for its removal process before he would be authorized to access the computer.

77. In doing so, Joe Campbell thereby furthered his intended fraud by obtaining TCT's valuable trade secrets.

78. He has used these in the Campbell Class Action, on his website, and could be sharing this information with TCT's competitors. TCT's competitors would likely pay a significant sum for the trade secrets.

79. John and Jane Does conspired with the other Defendants to violate this portion of the Act.

80. TCT suffered damage and loss and continues to suffer damage and loss caused by Defendants' violation of this portion of the Act.

81. During any one-year period, the loss to TCT far exceeds $5,000.00 in value.

## TCT'S SEVENTH CAUSE OF ACTION
## BREACH OF NON-DISCLOSURE AGREEMENT, CORPORATE POLICIES AND RESOLUTIONS

82.     TCT restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

83.     Joe Campbell, in his capacity as a director of TCT, was bound by a general confidentiality/non-disclosure agreement, a director confidentiality policy, and resolutions of the board of directors further forbidding directors from disseminating trade secret or confidential information.

84.     Joe Campbell was aware of the general confidentiality/non-disclosure agreement, the director confidentiality policy, and the corporate resolutions.

85.     The general confidentiality/non-disclosure agreement, the director confidentiality policy, and the corporate resolutions are validly binding agreements and/or obligations, of which the terms are clear and unambiguous.

86.     The general confidentiality/non-disclosure agreement, director confidentiality policy, and resolutions remain in effect today.

87.     Joe Campbell has breached his obligation of confidentiality set forth in these three documents by sharing confidential information with third parties and the public.  He also breached his obligations by refusing to return his laptop for proper file removal and safekeeping, in contravention of a specific board directive.

88.     Joe Campbell's breaches caused damage to TCT in an amount to be proven at trial.

## TCT'S EIGHTH CAUSE OF ACTION
## CONVERSION OF LAPTOP AND CONFIDENTIAL INFORMATION THEREON

89.    TCT restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

90.    Following the termination of his service on the co-operative's board, Joe Campbell failed to return his company-issued laptop to TCT. This failure prevented TCT staff from removing its proprietary date and then placing such information on the company server for safekeeping. The company-issued laptop retained by Joe Campbell contained proprietary information spanning his entire time as a board member for TCT.

91.    The board of the co-operative, of which Joe Campbell was a member, was dissolved at the time TCT became a privately owned company.

92.    TCT has legal title to the laptop and the confidential information thereon, since Joe Campbell is no longer on the board.

93.    TCT gained the immediate right to repossess the laptop and confidential information stored thereon once Joe Campbell's service on the co-operative board was terminated, effective January 1, 2015. Joe Campbell's conversion of the property began at the time of such termination and has continued to date.

94.    Joe Campbell exercised dominion over the property in a manner that denied TCT its rights to use and enjoy the laptop and the confidential information stored thereon. Joe Campbell, with the help of the other Defendants, shared confidential, proprietary information with the public.

95.     Even though Joe Campbell lawfully obtained the laptop and the confidential information stored thereon when he originally received it as a member of the co-operative's board, TCT has made various demands to Joe Campbell for the return of the laptop and confidential information stored thereon since the termination of his service on the board. Joe Campbell has refused to return the laptop and the confidential information stored thereon.

96.     TCT suffered damages caused by this conversion in an amount to be proven at trial and continues to suffer damages as Defendants use this proprietary information.

## TCT'S NINTH CAUSE OF ACTION
## PRELIMINARY INJUNCTIVE RELIEF AS TO MISAPPROPRIATION
## OF TRADE SECRETS

97.     TCT restates, re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

98.     As alleged above, Defendants have misappropriated trade secrets and continue to do so each day until TCT's company laptop, and all other obtained information, is destroyed or returned to TCT for proper removal of all trade secrets and Defendants cease using, distributing and disseminating any and all trade secrets that they may continue to possess in the interim.

99.     On its cause of action for misappropriation of trade secrets, TCT has a substantial likelihood of success on the merits.

100.    TCT will suffer irreparable harm unless the injunction is issued. A preliminary injunction is the only way to prevent Defendants from continuing to use trade secrets in this lawsuit and in the Campbell Class Action. In addition, there is no way for TCT to know whether any other trade

secrets, like the illegally published information concerning TCT and Union Bank's relationship, will be published on Defendants' website or otherwise shared.

101.    The threatened injury outweighs the harm that the preliminary injunction may cause Defendants, because Defendants are not harmed by the injunction.  Immediately stopping use of the TCT company computer, delivering it to TCT to have all misappropriated trade secrets removed, and returning the laptop to Joe Campbell will not harm Defendants.  Defendants are also not harmed by immediately ceasing use of any and all trade secret information they have in their possession or under their control.

102.    If issued, the injunction will not adversely affect the public interest.  An injunction would serve the public interest by protecting valuable trade secrets.

103.    TCT cannot be compensated adequately for the continued misappropriation and illegal use of trade secrets during the pending lawsuits.  Defendants have been using this protected and confidential information on their website and in the Campbell Class Action.

104.    A preliminary injunction would prevent any actual or threatened misappropriation and does not prevent a person from entering into an employment relationship or conflict with applicable state law prohibiting restraints on the practice of a lawful profession, trade, or business.

WHEREFORE, Plaintiff requests money damages from Defendants in an amount that will reasonably and fairly compensate Plaintiff for all of its damages, including punitive damages, statutory interest from the date this cause of action accrued, pre and post-judgment interest,

expenses, court costs, attorneys' fees, injunctive relief and such other relief as the Court may deem just and proper.

DATED this _25_ day of May, 2017.

> TRI COUNTY TELEPHONE
> ASSOCIATION, INC., Plaintiff
>
> By:_____
>    William L. Simpson (WSB # 5-2189)
>
> Burg, Simpson, Eldredge, Hersh &
> Jardine, P.C.
> 1135 14th Street
> Cody, WY 82414
> bsimpson@skelaw.com
>
> 307-527-7891
> Fax:  307-527-7897
>
> ATTORNEYS FOR PLAINTIFF

**JURY DEMAND**

COMES NOW, Tri County Telephone Association, Inc. ("TCT" or "Plaintiff"), by and through counsel, Burg, Simpson, Eldredge, Hersh & Jardine, P.C., demands that the captioned matter, and all issues relating thereto, be tried before a jury.

DATED this _25_ day of May, 2017.

TRI COUNTY TELEPHONE

William L. Simpson, WSB # 5-2189