FILED



3:38 pm, 7/19/17
Stephan Harris
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRI COUNTY TELEPHONE ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>JOE CAMPBELL, et al.,<br><br>Defendants. | Case No: 17-CV-89-F |

**ORDER DENYING DEFENDANTS' MOTION FOR DISQUALIFICATION OF COUNSEL AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' Motion for Disqualification of Counsel and Motion to Dismiss. (Doc. 8). The Court has considered the motion, response, and reply, and is fully informed in the premises. For the following reasons, Defendants' Motion for Disqualification of Counsel is DENIED and Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff Tri County Telephone Association, Inc. is a telephone, internet, and wireless services company located in Cody, Wyoming. (Doc. 1 [Compl.] at 3, ¶ 10). Plaintiff provides its services to customers in Wyoming and Montana. (*Id.*). Prior to January 1, 2015, Plaintiff was a member-owned co-operative company. (*Id.* ¶¶ 10–11). However, on January 1, 2015, Plaintiff became a privately owned company and the co-

operative board of directors was dissolved. (*Id.* ¶¶ 11–12). The only member on the board who opposed the transition from a member-owned co-operative company to a privately owned company was Defendant Joe Campbell ("Mr. Campbell").[1] (*Id.* ¶ 13).

Nearly a year after the sale of the co-operative, on December 28, 2015, Mr. Campbell and his wife Defendant Barbara Campbell ("Mrs. Campbell") initiated a lawsuit in Wyoming state court "against the former co-operative, the newly private TCT, the investors and owners of TCT, the former board members of the co-operative, the former executive officers of the co-operative, the corporate attorneys for the co-operative, and certain other parties." (*Id.* ¶ 14). Mr. and Mrs. Campbell's lawsuit is currently pending before the District Court for Park County, Wyoming and is styled as a class action. (*Id.* ¶¶ 14–15).

Thereafter, on May 26, 2017, Plaintiff filed this lawsuit alleging misappropriation of trade secrets, intentional or tortious interference with contract, business expectancy, and prospective economic advantage, violations of the Computer Fraud and Abuse Act, breach of non-disclosure agreement, corporate policies, and resolutions, conversion of laptop and confidential information thereon, and seeking preliminary injunctive relief as to the misappropriation of trade secrets. (*See id.* at 5–17, ¶¶ 21–104). Plaintiff's claims stem from the actions of Mr. Campbell after Plaintiff became privately owned. (*See id.* at 3–4, ¶¶ 16–20). Generally, Plaintiff alleges Mr. Campbell "had access to certain information that at the time he received it was confidential, proprietary, or otherwise not

[1] Defendant Joe Campbell was a member of the board of directors for Plaintiff from February 24, 2003 until January 1, 2015. (Doc. 1 [Compl.] at 3, ¶ 12).

public information" and disbursed that information to third parties. (*Id.* at 3, ¶ 16). In addition, Plaintiff asserts Mr. Campbell was subject to—and is currently subject to—"strict and binding confidentiality obligations" because he was a party to confidentiality and non-disclosure agreements and resolutions. (*Id.* at 3–4, ¶ 17). In support of its claims, Plaintiff alleges Mr. Campbell used his company-issued computer to obtain the confidential information he provided to third parties. (*Id.* at 5–6, ¶¶ 23, 29–30). Specifically, Plaintiff states that upon transitioning into a private company, Mr. Campbell's company-issued laptop was to be returned to Plaintiff to have all of the trade secrets contained on the laptop removed. (*Id.* at 5, ¶ 22). Plaintiff claims that "[i]nstead of complying with the board directive, Joe Campbell kept the company-issued laptop and TCT's trade secrets thereon, including TCT's trade secrets spanning his entire time as a board member for TCT." (*Id.* at 5, ¶ 23).

## LEGAL STANDARD

### *Disqualification of Counsel*

Typically, "[m]otions to disqualify are governed by two sources of authority." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994). "First, attorneys are bound by the local rules of the court in which they appear." *Id.* In accordance with the United States District Court for the District of Wyoming Local Civil Rules, this Court follows the Wyoming Rules of Professional Conduct. U.S.D.C.L.R. 84.4(b) ("This Court shall apply the Rules of Professional Conduct for Attorneys at Law, as they have been adopted by the Wyoming Supreme Court."); *see also Cole*, 43 F.3d at 1383 ("Federal district courts usually adopt the Rules of Professional Conduct of the states where they

are situated."). Additionally, "because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law." *Cole*, 43 F.3d at 1383 (citation omitted). As such, these motions "are governed by the ethical rules announced by the national profession and considered 'in light of the public interest and the litigants' rights.'" *Id.* (citation omitted).

***Failure to State a Claim***

It is well-settled that "a judge ruling on a defendant's motion to dismiss a complaint, 'must accept as true all factual allegations contained in the complaint.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (citations omitted). The Court must also view the allegations in the light most favorable to the nonmoving party. *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

When ruling on a motion to dismiss for failure to state a claim, it is not the Court's function "to weigh [the] potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). To survive a motion to dismiss, the plaintiff's "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard "is not akin to a 'probability requirement,' but asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Thus, although the plaintiff does not need to provide detailed factual allegations, the complaint must contain more than mere "labels," "conclusions," and "formulaic recitations of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## DISCUSSION

### A. Defendants' Motion for Disqualification of Counsel

Defendants ask this Court to disqualify Chris Edwards and the law firm of Burg Simpson Eldredge Hersh & Jardine, P.C., from representing Plaintiff in this case.[2] (*See* Doc. 9 [Mem. in Supp. Mot.] at 13–16). Defendants claim they are current clients of Ms. Edwards and this action is directly adverse to their interests. (*Id.* at 13). Defendants also claim that even if they are not current clients, they are former clients of Ms. Edwards and, as such, Rule 1.9 of the Wyoming Rules of Professional Conduct prohibits Ms. Edwards or her firm from representing Plaintiff in this case. (*Id.*). Plaintiff responds by stating, "Defendants' arguments fail because Burg Simpson, and its current and former attorneys, (including Chris Edwards), do not currently represent the Defendants in any form and they have not previously represented the Defendants in the 'same or substantially related matter.'" (Doc. 11 [Resp.] at 3). Thus, the initial inquiry this Court must address is whether an attorney-client relationship exists or existed between Defendants and Ms. Edwards.

To establish the existence of an attorney-client relationship, "a party must show that (1) it submitted confidential information to a lawyer and (2) it did so with the

[2] Ms. Edwards was a shareholder of Burg Simpson Eldredge Hersh & Jardine, P.C., from October 1, 2000 until October 1, 2015. (Doc. 11-1 [Edwards Aff.] at 1, ¶ 2).

reasonable belief that the lawyer was acting as the party's attorney." *Cole*, 43 F.3d at 1384. Once an attorney-client relationship is formed, the lawyer is prohibited from revealing confidential information related to the "representation of [the] client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted" by Rule 1.6(b) of the Wyoming Rules of Professional Conduct. WYO. RULES OF PROF'L CONDUCT r. 1.6(a). Confidentiality is maintained for current and former clients and, therefore, implicates the issue of conflicts of interest.

According to Rule 1.7, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." WYO. RULES OF PROF'L CONDUCT r. 1.7(a).

> A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

*Id.* However, even if a concurrent conflict of interest does not exist, communications with former clients are also protected under the rules. Rule 1.9(a) provides,

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

WYO. RULES OF PROF'L CONDUCT r. 1.9(a).

Here, Defendants argue they are current clients of Ms. Edwards or, in the alternative, former clients in a substantially related matter. (Doc. 9 [Mem. in Supp. Mot.]

at 13). Defendants suggest that Mr. Campbell's Affidavit provides sufficient evidence to demonstrate that he is a current client of Ms. Edwards. (*Id.* at 14–16). In his Affidavit, Mr. Campbell does not dispute that Ms. Edwards was retained as Plaintiff's counsel—before Plaintiff became privately owned—and educated the board members on their fiduciary duties. (*Id.* at 28–29, ¶¶ 4, 7). Instead, Mr. Campbell claims that after Ms. Edwards no longer represented Plaintiff, she provided Mr. Campbell and his wife with legal advice regarding the takeover that occurred in January of 2015. (*Id.* at 34, ¶ 9). Mr. Campbell claims Ms. Edwards's "representation involved [Mr. Campbell's] review and retention of information obtained as a board member and advice on what [he] could do with the information that came to [him] as a board member and as one who would seek to protect the rights of the owners." (*Id.* at 35–36, ¶ 12).

According to Ms. Edwards's Affidavit, she admits to meeting with Defendants on several occasions, but denies an attorney-client relationship existed. (*See* Doc. 11-1 [Edwards Aff.] at 3, ¶¶ 8–9). Ms. Edwards states, Defendants met with her "when [Mr. Campbell] had concerns about activities related to Tri County, as a constituent of Tri County, and how those activities affected the Members of Tri County." (*Id.* ¶ 8). Ms. Edwards claims that "[d]uring those meetings, [she] made it clear to Joe Campbell that [she] could not represent him against Tri County and that [she] could not represent him with respect to matters pertaining to Tri County." (*Id.* ¶ 9). Ms. Edwards also claims that "[a]t practically all of [their] meetings, if not all of [their] meetings, [she] told him he needed to get an attorney to represent him personally . . . ." (*Id.*).

Although there are conflicting Affidavits, the Court finds a current attorney-client relationship does not exist between Defendants and Ms. Edwards. As previously stated, for Defendants to establish the existence of an attorney-client relationship, they must show they submitted confidential information to Ms. Edwards and they did so with the reasonable belief that Ms. Edwards was acting as their attorney. *See Cole*, 43 F.3d at 1384. The Court recognizes that Defendants claim Mr. Campbell disclosed potentially confidential information to Ms. Edwards. However, the Court finds Defendants could not reasonably believe Ms. Edwards was acting as their attorney.

It is undisputed that Ms. Edwards was retained as Plaintiff's counsel until 2011. It is also undisputed that Ms. Edwards met with Defendants after 2011. However, although Ms. Edwards met with Defendants, she specifically told them she was not their attorney and could not represent them on matters relating to Plaintiff. (*See* Doc. 11-1 [Edwards Aff.] at 3, ¶ 9). Additionally, the alleged information Defendants disclosed to Ms. Edwards pertained to Mr. Campbell acting as a board member. (Doc. 9 [Mem. in Supp. Mot.] at 35–39, ¶¶ 11–14). Therefore, because Mr. Campbell does not dispute Ms. Edwards's representation of Plaintiff, it is unreasonable for him to assume an attorney-client relationship existed to Plaintiff's disadvantage. For these reasons, the Court finds Defendants are not current clients of Ms. Edwards and no conflict of interest exists under Rule 1.7.

Regarding the issue of whether Defendants are former clients of Ms. Edwards, it is undisputed that Ms. Edwards was retained by Defendants for estate planning services in 2009. (*See* Doc. 11 [Resp.] at 4). According to Ms. Edwards's Affidavit, Defendants

retained her to prepare their Last Wills and Testaments in the latter part of 2009. (Doc. 11-1 [Edwards Aff.] at 2, ¶ 7; *see* Doc. 9 [Mem. in Supp. Mot.] at 39, ¶ 15). However, Ms. Edwards claims she "provided no further services to Joe and Barbara Campbell with respect to their estates" since September of 2009. (Doc. 11-1 [Edwards Aff.] at 3, ¶ 8). Moreover, Defendants do not allege Ms. Edwards provided additional estate planning services after 2009. As such, the Court finds Defendants are former clients of Ms. Edwards for the estate planning services Ms. Edwards conducted. The next inquiry, therefore, is whether Ms. Edwards or her firm currently represent Plaintiff in the same or substantially related matter as they formerly represented Defendants. *See* WYO. RULES OF PROF'L CONDUCT r. 1.9(a).

It seems apparent to the Court that the services provided to Defendants were unique to their estate planning needs and have no relationship to the current case. For this reason, the Court finds that although Defendants were former clients of Ms. Edwards, the services provided to Defendants are not the same or substantially related to this matter in which Plaintiff's interests are materially adverse to the interests of Defendants. *See id.* As such, the Court finds no conflict of interest exists under Rule 1.9 and Defendants'Motion for Disqualification is DENIED.

**B. Defendants' Motion to Dismiss**

In their motion to dismiss, Defendants argue dismissal is appropriate because Plaintiff fails to state a claim as to the federal claims and, thus, deprives this Court of subject matter jurisdiction. (Doc. 9 [Mem. in Supp. Mot.] at 16). Defendants also argue that even if this Court finds supplemental jurisdiction exists, they state the "Court would

be wise to dismiss the state claims due to the dismissal of the federal claims and the fact that a state case is pending." (*Id.* at 22). Plaintiff refutes Defendants' arguments and asserts it has pleaded sufficient facts to state claims upon which relief may be granted. (Doc. 11 [Resp.] at 9–21).

***Federal Claims***

Plaintiff alleges three federal causes of action. First, Plaintiff claims Defendants violated 18 U.S.C. § 1836 for misappropriating trade secrets. (Doc. 1 [Compl.] at 5–7, ¶¶ 21–36). Next, Plaintiff claims Defendants violated 18 U.S.C. § 1030(a)(2)(C) of the Computer Fraud and Abuse Act. (*Id.* at 11–12, ¶¶ 62–71). Third, Plaintiff claims Defendants violated 18 U.S.C. § 1030(a)(4) of the Computer Fraud and Abuse Act. (*Id.* at 12–13, ¶¶ 72–81). Because this case is brought under 28 U.S.C. § 1331, the Court continues to have subject matter jurisdiction if a federal claim survives Defendants' motion to dismiss. Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

First, Plaintiff claims Defendants violated the Defend Trade Secrets Act,18 U.S.C. § 1836 for misappropriating trade secrets. (Doc. 1 [Compl.] at 5). Defendants argue this claim fails because Plaintiff's Complaint does not state what the trade secrets are, that any claimed action on Defendants' part was taken in interstate commerce, that the alleged misappropriation occurred before 18 U.S.C. § 1836 was enacted, and 28 U.S.C. § 1836 does not seek to inhibit whistleblowers. (Doc. 9 [Mem. in Supp. Mot.] at 16–18). In Plaintiff's response, it argues it has pleaded sufficient facts to state a claim upon which

relief may be granted under Rule 8 of the Federal Rules of Civil Procedure, *Twombly*, and *Iqbal*. (*See* Doc. 11 [Resp.] at 10–14).

As previously stated, to survive a motion to dismiss for failure to state a claim, the plaintiff must plead sufficient facts to state a plausible claim. *See Iqbal*, 556 U.S. at 678. Plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To state a claim under 18 U.S.C. § 1836, the plaintiff must demonstrate, it was the owner of a misappropriated trade secret and the trade secret related to a product or service used in interstate or foreign commerce. *See* 18 U.S.C. § 1836(b)(1) ("An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."). An owner of a trade secret is "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4). A trade secret includes

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing . . . .

*Id.* § 1839(3). Misappropriation of a trade secret is the

> (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
> (i) used improper means to acquire knowledge of the trade secret;

> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>
> > (I) derived from or through a person who had used improper means to acquire the trade secret;
> >
> > (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
> >
> > (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> (iii) before a material change of the position of the person, knew or had reason to know that—
>
> > (I) the trade secret was a trade secret; and
> >
> > (II) knowledge of the trade secret had been acquired by accident or mistake[.]

*Id.* § 1839(5).

Here, there seems to be no dispute that Plaintiff is the owner of certain trade secrets. Rather, the parties disagree as to what the trade secrets entail. (Doc. 9 [Mem. in Supp. Mot.] at 16 (stating one of the reasons Defendants believe dismissal is appropriate is because the Complaint fails to state "what trade secrets are at issue.")). In the Complaint, Plaintiff reiterates the definition of a trade secret and asserts the trade secrets are related to its products and services. (Doc. 1 [Compl.] at 5, ¶¶ 24, 26). Plaintiff also asserts the "trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." (*Id.* at 6, ¶ 28). However, Plaintiff fails to explain what trade secrets Defendants are alleged to have misappropriated to third parties. Without providing more specificity as to the trade secrets, the Court finds Plaintiff fails to state a claim under 18 U.S.C. § 1836(b)(1) because it fails to put Defendants on sufficient notice. As such,

Plaintiff's first cause of action pursuant to 18 U.S.C. § 1836 is DISMISSED WITHOUT PREJUDICE.

The second and third federal claims Plaintiff asserts are under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. First, Plaintiff claims Defendants violated 18 U.S.C. § 1030(a)(2)(C). A person violates 18 U.S.C. § 1030(a)(2)(C), if he or she "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer[.]" 18 U.S.C. § 1030(a)(2)(C). A protected computer is a computer

> (A) exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government; or
>
> (B) *which is used in or affecting interstate or foreign commerce* or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States . . . .

*Id.* § 1030(e)(2) (emphasis added).

Here, Plaintiff alleges it "is a telecommunications company based in Cody, Wyoming, which provides telephone, internet, and wireless services to customers in *Wyoming and Montana*." (Doc. 1 [Compl.] at 3, ¶ 10 (emphasis added)). Plaintiff also alleges that before it became privately owned, the members on the board of directors were provided with company-issued laptops that contained classified information. (*Id.* at 5, ¶ 22). However, on January 1, 2015, the members on the board were required to return their company-issued laptops to Plaintiff's staff for the information to be removed. (*Id.*).

Plaintiff claims Mr. Campbell failed to return the company-issued laptop as required and has thereby obtained unauthorized information from the computer. (*Id.* at 12, ¶ 63).

Based on Plaintiff's Complaint, the Court finds Plaintiff has pleaded sufficient facts to state a claim under 18 U.S.C. § 1030(a)(2)(C). Because Plaintiff is a telecommunications company providing services to Wyoming and Montana, the Court finds its company-issued computer affects interstate commerce. Additionally, Plaintiff has sufficiently alleged that Mr. Campbell has exceeded his authorization to be in possession of a company-issued computer by claiming Mr. Campbell failed to return his company-issued computer by January 1, 2015. Therefore, the Court finds federal jurisdiction exists. Nevertheless, the Court will address Plaintiff's 18 U.S.C. § 1030(a)(4) claim.

In addition to Plaintiff's claim under 18 U.S.C. § 1030(a)(2)(C), it also alleges Defendants violated 18 U.S.C. § 1030(a)(4). A person violates 18 U.S.C. § 1030(a)(4) if he or she

> *knowingly and with intent to defraud*, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period . . . .

18 U.S.C. § 1030(a)(4) (emphasis added).

According to the Complaint, Plaintiff alleges Mr. Campbell retained the company-issued computer without authorization and as a means of obtaining Plaintiff's valuable trade secrets. (Doc. 1 [Compl.] at 13, ¶ 77). Plaintiff further alleges that Mr. Campbell

refused to return the company-issued computer and used it to defraud Plaintiff. (*Id.*). Moreover, Plaintiff claims Mr. Campbell used the information he obtained from the company-issued computer "in the Campbell Class Action, on his website, and could be sharing this information with TCT's competitors." (*Id.* ¶ 78). Finally, Plaintiff asserts that "[d]uring any one-year period, the loss to TCT far exceeds $5,000.00 in value." (*Id.* ¶ 81). After viewing the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff has pleaded sufficient facts to state a claim under 18 U.S.C. § 1030(a)(4).

Although the Court finds Plaintiff has pleaded sufficient facts to state claims under 18 U.S.C. § 1030, Defendants also argue Plaintiff's 18 U.S.C. § 1030 claims are barred by the applicable statute of limitations. (Doc. 9 [Mem. in Supp. Mot.] at 19). The statute of limitations provides, "[n]o action may be brought . . . unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). Thus, Defendants argue that because Plaintiff was aware that Mr. Campbell failed to return his company-issued computer on January 1, 2015, the statute of limitation commenced on that date. (Doc. 9 [Mem. in Supp. Mot.] at 19). As such, Defendants argue this action is barred because Plaintiff filed this case on May 26, 2017. (*Id.*). In response, Plaintiff claims it was not aware of Defendants' actions until December 28, 2015. (Doc. 11 [Resp.] at 17). Plaintiff states that "[b]efore this date, it was only known to Plaintiff that [Mr. Campbell] had not returned the laptop as required." (*Id.* at 17–18). Plaintiff also claims that "[o]nly when the Complaint for the class action was filed did Plaintiff become aware Defendants had intentionally accessed the protected computer without authorization and were in violation of 18 U.S.C. § 1030." (*Id.* at 18).

Because the statute of limitations allows for the accrual date to be "the date of the discovery of the damage," the Court finds Plaintiff's Complaint is not time barred. As such, the Court finds the date of accrual began on December 28, 2015 when Plaintiff became aware of the damage. (*See id.* at 17).

***State Claims***

In addition to attacking Plaintiff's federal claims, Defendants argue that if the Court finds Plaintiff fails to plead sufficient facts to state a claim under federal law, dismissal is warranted because the Court will no longer have subject matter jurisdiction. Although the Court dismissed Plaintiff's 18 U.S.C. § 1836 claim, the Court found Plaintiff's 18 U.S.C. § 1030 claims survive. As a result, the Court continues to have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. Thus, the Court also has jurisdiction over Plaintiff's state law claims.

## CONCLUSION

For the reasons stated above, the Court finds Defendants are not current clients of Ms. Edwards and that although Defendants are former clients of Ms. Edwards, the services provided to them are not the same or substantially related to this case. As such, the Court finds there is not a conflict of interest requiring disqualification of Plaintiff's attorney and, therefore, Defendants' Motion for Disqualification of Counsel is DENIED. The Court also finds Defendants' Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted is GRANTED IN PART and DENIED IN PART. While the Court dismissed Plaintiff's 18 U.S.C. § 1836 claim without prejudice

and provides Plaintiff an opportunity to amend, the Court also found Plaintiff's 18 U.S.C. § 1030 claims survive. Thus, the Court continues to have subject matter jurisdiction.

IT IS ORDERED Defendants' Motion for Disqualification of Counsel (Doc. 8) is DENIED.

IT IS FURTHER ORDERED Defendants' Motion to Dismiss (Doc. 8) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED for Plaintiff's first cause of action pursuant to 18 U.S.C. § 1836 and that claim is DISMISSED WITHOUT PREJUDICE. The reminder of Defendants' Motion to Dismiss is DENIED.

IT IS FINALLY ORDERED Plaintiff has until August 8, 2017 to file an Amended Complaint as to Plaintiff's 18 U.S.C. § 1836 claim.

Dated this 18 day of July, 2017.

NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE