FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 DEC -5 PM 3: 22

STEPHAN HARRIS, CLERK
CHEYENNE

Drake D. Hill (Wyo. Bar #6-3106)
Hill Law Firm, LLC
2616 Carey Avenue
Cheyenne, Wyoming 82001
(307) 638-9334 (office)
ddhill@hilllawfirm.net
(307) 638-9334 (telecopy)
*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRI COUNTY TELEPHONE ASSOCIATION, INC. a Wyoming corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JOE CAMPBELL and BARBARA CAMPBELL, Individuals, and JOHN AND JANE DOES 1-10,<br><br>Defendants. | Docket No 17-CV-89-F |

---

## DEFENDANTS JOE CAMPBELL AND BARBARA CAMPBELL'S RESPONSE TO PLAINTIFF'S MOTION FOR ISSUANCE OF WRIT OF REPLEVIN AND ORDER OF RETURN, RESPONSE TO MOTION TO SET BOND AMOUNT, AND MOTION FOR PROTECTIVE ORDER

---

COMES NOW Defendants Joe Campbell and Barbara Campbell, and in response to the Plaintiff's Motion For Issuance of Writ of Replevin and Order of Return and Motion to Set Bond Amount, and in support of the Defendants' Motion for Protective Order, state as follows:

***Abstract***

The computer at issue is owned by Joe Campbell. Because that computer could be important to the class action pending in state court, Mr. Campbell has taken steps to safeguard the computer. In contrast, the Plaintiff has stated that it wants the computer back to wipe clean the hard drive, and thereby destroy evidence that could be valuable in the class action suit. Mr. Campbell asks the Court not to allow this to happen, but rather, to enforce the rules relating to the preservation of evidence and thereby ensure that evidence is preserved for the class action.

## (A) FACTUAL BACKGROUND

### *The Plaintiff Does Not Own the Computer*

The most basic legal requirement of a replevin motion is demonstration of a superior property right.[1]  Joe Campbell is the owner of the computer.[2]

The board members were given their computers.[3]  The December16, 2014 board minutes make clear that each board member was given their TCT provided computer and that TCT would not remain the owner of the computers.[4]  Specifically, the minutes state that the computers, which were considered surplus property, had no value ("price set at $0") and that each board member would keep their computer.[5]  This board meeting took place in the

---

[1] *See* Wyo. Stat. § 1-15-102 *et seq.*
[2]  *See* Affidavit of Joe Campbell, **Exhibit 1**, ¶1.
[3] *Id.* ¶1.
[4] *Id.* ¶1.
[5] *Id.* ¶1, **Ex. "A."**

2

transition period as one of the final acts of the board before the transaction closed on January 2, 2015. The board resolution makes clear that the entities taking over the Cooperative (the Plaintiff here), were not being given the computers and they were not making a claim for those computers. Rather, the board was disposing of surplus property. As the act of the entity before the takeover, the Plaintiff has no standing relating to the computer as the evidence is clear that this was not property being acquired or transferred.

The board discussed making a backup of the hard drive to preserve data in the event of litigation, but simply asked that the board members ensure that "nothing is deleted before the stored data and files are preserved."[6] Mr. Campbell has done exactly that—he has safeguarded the computer for preservation purposes.[7]

Chris Davidson, a defendant in the class action suit, later unilaterally sought to wipe clean the computer. In the Plaintiff's motion for replevin, the Plaintiff states that the computer was to be returned for "the company's data to be deleted." By board policy, board members were **not** to delete TCT information, but were to take steps to preserve the information, which Mr. Campbell has done.[8] The Plaintiff seeks to destroy evidence. Mr. Campbell has sought to preserve evidence.

### Chris Davidson's Unilateral Action in Contravention of the Board's December 16, 2014 Board Resolution

Chris Davidson, without authority, has unilaterally decided that the TCT computers should be wiped clean. The board resolution of December 16, 2014 stated that data would

---

[6] *Id.* ¶1; Ex. "A."

[7] *Id.* ¶2.

[8] *Id.* ¶1.

3

not be deleted.[9]  The board did not work for Chris Davidson; Chris Davidson was an employee of the Cooperative.  The board passed a resolution giving the computers to board members.  The Plaintiff's desire to delete information not only would violate court rules relating to the preservation of evidence, but seeks to defy the board's resolution giving the computers to each board member and seeking to preserve evidence in the event of litigation.[10]  Further, contradicting what it is saying now, the Plaintiff sent a preservation of evidence or "hold" letter in the early stages of the class action.[11]  Now the Plaintiff says it wants to delete or destroy evidence.

The Campbells' motion for partial summary judgment in the class action, attached as **Exhibit "D"** to Mr. Campbell's Affidavit, shows clear violations of Wyoming Statutes that, as a matter of law, make the transaction void. Stated succinctly, Davidson and Schlenker sought to terminate the interests of all owners of the Cooperative, which Wyoming law does not allow, and to convert the Cooperative (which under Wyoming law is a non-profit) into a for-profit entity that they would own, which is expressly forebidden by Wyoming statutes. A review of the pleadings in the class action suit is important because this case cannot be understood without that basis of reference.

The motion for replevin, like Davidson's attempt to obtain the computer to wipe it clean, is an attempt to withhold evidence from the state action.  The Plaintiff in this case is

---

[9] *Id.* ¶1.
[10] *Id.* ¶1; Ex. "A."
[11] *See* Exhibit "B" to Affidavit of Joe Campbell; Ex. 1.

nine months overdue in producing documents in the class action suit, and the present motion is in furtherance of concealing or destroying evidence.

### *Public Policy Cannot Stand for Chris Davidson Deleting or Controlling Litigation Related Information on Joe Campbell's Computer*

Board members are fiduciaries required to act in the best interest of shareholders, or in the case of the cooperatives, members who are the owners. Consistent with this fiduciary duty, board members are required to review company information and stay informed of the business policies and affairs of the corporation, and consistent with this duty have an "absolute and unqualified" right to copy and inspect company information.[12] This is the position that most courts have taken. This means that it is in the board member's sole discretion which company information he copies and inspects. However, if a board member does not review pertinent company information pertaining to his duty to act in the best interest of members he may be civilly liable for damages related to such a breach of duty. After a board member's term has ended he or she still has a qualified right to inspect and copy company information.[13] This right includes without limitation all information pertaining to the period of time he was a director but not data created after he was no longer a director. This right includes all attorney-client privileged documents from the director's time in office which have been illegally withheld from Mr. Campbell.[14] Moreover, as reflected in **Exhibit "E"** to Mr. Campbell's Affidavit, in the class action pending in state court, Judge

---

[12] *Cohen v. Cocoline Products, Inc.,* 127 N.E. 2d 906 (New York 1955).
[13] *Id.*
[14] *Id.*

Young has ruled that "the putative class members have a right to see the source documents that constitute the basis of the Plaintiffs' claims."

### *Violation of Wyo. Stat. §17-19-1807*

Pursuant to the motion for partial summary judgment in the class action, on behalf of the class of owners, the BHT entities are illegally in possession of the Cooperative's assets. While the laptop was recognized as not having value (i.e., was surplus property) and was given to Joe Campbell, under Wyo. Stat. § 17-19-1807, all of the property of the Cooperative still belongs to the owners of the Cooperative. Even more basically, the computer was never something to be acquired by those taking over the Cooperative. Either way, the Plaintiff has no claim to the computer. The Plaintiff wants the computer, and to the Plaintiff, this converts into ownership. It does not.

### (B) APPLICABLE LAW

### *Wyoming Statute § 1-15-105*

The plaintiff's motion is a pointless procedural exercise. Even if the Plaintiff's motion were granted, it has placed a value of $500 on the old laptop.

Federal courts under *Erie* apply state substantive law.[15] Prejudgment replevin is controlled by Wyoming Statutes, as the Plaintiff has recognized.[16] Pursuant to Wyo. Stat. §1-15-105(a)(ii), a defendant may obtain a complete release of a replevin order by posting a bond which is not required to exceed the value of the property which has been identified (here, $500—which is grossly high for the value of an old laptop computer).

---

[15] *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938).
[16] *Brown v. Green,* 618 P.2d 140, 144 (Wyo. 1980).

6

Mr. Campbell will post bond if the Plaintiff is successful in this motion. This will permanently vest Mr. Campbell with title to the laptop as Wyo. Stat. §1-15-105(a)(ii) is clear that even if the Plaintiff could prove its conversion claim,[17] which it cannot, it would only be entitled to the proceeds from the bond in lieu of possession of the property. Wyo. Stat. §1-15-105(e) vests permanent title with the defendant (Mr. Campbell), providing that "[u]pon a discharge of the writ or release of the property under this section, all of the property released, if not sold, and the proceeds of any sale of the property, shall be delivered to the defendant." Wyoming law does not allow prejudgment replevin to serve as double recovery and the word "replevin" has been specifically defined to reflect the statutory limitations imposed on the action.[18]

### (C) STATUS OF THE COMPUTER

The computer is presently in the possession of a computer forensics expert to prepare a report on the usage of the computer after December 31, 2014 (the date after which the Plaintiff claims is at issue under the Computer Fraud and Abuse Act). The computer is being inspected by Dennis Williams, a computer forensics expert who served with the FBI for 32 years and served in the FBI's computer forensics division.[19] He is regarded as one of the most qualified and respected computer forensics experts. Not only did counsel for Mr.

---

[17] The Plaintiff has provided no evidence that the successor entity was to assume ownership of the computer, nor has the Plaintiff shown that the surplus property given to the members of the board of directors by the board of directors was not a valid act.

[18] *Coones v. F.D.I.C.*, 848 P.2d 783 (Wyo. 1993).

[19] A copy of the letter to counsel to the Plaintiff is attached as **Exhibit "C"** to the Affidavit of Joe Campbell (attached as **Exhibit 1**) in which the qualifications of the computer forensics expert were made known to the Plaintiff and in which Mr. Campbell offered to allow the Plaintiff to participate in the review of the computer by Mr. Williams.

Campbell notify the Plaintiff that the computer was being inspected, but he provided the Plaintiff with the name of the computer forensic expert conducting the examination, the qualifications of the expert, and invited the Plaintiff to participate in the examination.[20] The inspection is being conducted at no cost to the Plaintiff. In contrast, the Plaintiff wanted the computer examined by a person on whom qualifications were never disclosed and, unlike Mr. Campbell, wanted the examination performed without the participation of counsel for Mr. Campbell. The inspection of the computer is a straightforward process and will yield what it yields. As counsel for the Plaintiff knows, the inspection being performed is non-destructive and is being performed with the assurance of confidentiality even though the Plaintiff has not sought confidential treatment.

***Request for Protective Order***

After the computer has been examined by Mr. Campbell's expert, the computer may be examined by the Plaintiff's expert. As part of this response, Mr. Campbell asks that the Court enter a protective order requiring the return of the computer to Mr. Campbell's counsel once the Plaintiff's expert is finished with his or her review. The second component of the motion for protective order is that the computer may contain attorney-client privileged information and this information should not be reviewed or disclosed to the Plaintiff or any representative of the Plaintiff. Subject to these two conditions, Mr. Campbell is agreeable to turning the computer over to the Plaintiff's expert (conditioned upon its return to him after inspection with his personal information safeguarded) and asks for the entry of an order with

---

[20] *See* **Exhibit "C"** to Affidavit of Joe Campbell, Exhibit 1.

these conditions specified before the computer is released to the Plaintiff.  On December 5, 2017 at 1:57 p.m., the lawyers for the parties conferred by telephone. The Plaintiff is considering this approach and a form of order will be reviewed by the parties.

DATED this 5th day of December, 2017.

Respectfully submitted,

BY: _____

Drake D. Hill (WSB 6-3106)
Hill Law Firm, LLC
2616 Carey Avenue
Cheyenne, Wyoming 82001
(307) 638-9334
ddhill@hilllawfirm.net
-and-
Robert J. DiLorenzo
Attorney for Plaintiffs
Post Office Box 27
Emblem, Wyoming 82422
(307) 762-3315
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

This certifies that on December 5, 2017, the foregoing Response of Defendants to Plaintiff's Motion for Writ of Replevin and Order of Return, Motion to Set Bond Amount, and Defendants' Motion for Protective Order were served on counsel for the Plaintiff by U.S. Mail, postage fully prepaid, addressed as follows:

Larry Jones
Burg, Simpson, Eldredge, Hersch & Jardine, P.C.
1135 14th Street
Cody, Wyoming 82414

Jon Moyers
Moyers Law PC
490 North 31st Street #101
Billings, MT 59101

9

# Exhibit 1
# Affidavit of Joe Campbell

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRI COUNTY TELEPHONE ASSOCIATION, INC. a Wyoming corporation, | |
| Plaintiff, | |
| vs. | Docket No 17-CV-89-F |
| JOE CAMPBELL and BARBARA CAMPBELL, Individuals, and JOHN AND JANE DOES 1-10, | |
| Defendants. | |

## AFFIDAVIT OF JOE CAMPBELL

Upon being duly sworn to tell the truth, I, Joe Campbell, depose and state as follows:

1. My name is Joe Campbell. I am over the age of twenty-one years, am fully competent to give this Affidavit, and have personal knowledge of the facts stated in this Affidavit.

1. I served on the board of directors of Tri-County Telephone Association, Inc. (the "Cooperative") until the Cooperative was taken over by Neil Schlenker and the BHT entities at the start of 2015. In a meeting held on December 16, 2014, a decision of the board of directors was made relating to computers that the board members were using. The computers were given to board members as surplus property. The board minutes reflect that the computers were given "$0" value—meaning they were of no value to the Cooperative and were given to the board members. As such, I own the computer at issue in this case. A copy of the December 16, 2014 board minutes is attached to this Affidavit as Exhibit "A."

1

2. Consistent with the board's concern to preserve evidence in the event of litigation, I have held onto the computer, despite the fact that it is an old computer, and have held onto it for preservation purposes. I am aware that, after the class action was filed in state court, a letter was sent by the Plaintiff to this case requiring all evidence to be preserved, which I have done. A copy of that preservation letter is attached as this Affidavit as Exhibit "B."

3. Chris Davidson was the Manager of the Cooperative. He was involved in the takeover of the Cooperative. The board of directors did not work for Chris Davidson. As though Mr. Davidson had the power to overturn the decision of the board of directors, Davidson later sought to obtain the computer back from me. On Page 2 of the Plaintiff's replevin motion, the Plaintiff represents to the Court that the computer was to be returned "for the company's data to be deleted." That is incorrect. No information was to be deleted. I did not give the computer to Davidson as (a) it was, and is, my computer; (b) it contained my personal information unrelated to the Cooperative; (c) and deleting information would not comport with preservation of evidence.

4. The letter from my counsel to counsel for the Plaintiff relating to the forensic examination of the computer is attached as Exhibit "C" to this Affidavit.

5. A copy of the Motion for Partial Summary Judgment that has been filed in the class action pending in state court is attached as Exhibit "D" to this Affidavit.

6. A copy of Judge Young's "Order On Defendants' Motion for Protective Order" is attached to this Affidavit as Exhibit "E."

FURTHER AFFIANT SAYETH NOT.

2

JOE CAMPBELL

SUBSCRIBED AND SWORN to before me on this ____ day of December, 2017.

TRACEY MARKET     NOTARY PUBLIC
COUNTY OF          STATE OF
HOT SPRINGS        WYOMING
MY COMMISSION EXPIRES SEPTEMBER 21, 2018

Notary Public In and For
the County of Hot Springs,
State of Wyoming

My Commission Expires:

9-21-18

3

# Exhibit "A"
## to
# Affidavit of Joe Campbell

**TRI COUNTY TELEPHONE ASSOCIATION, INC.**
Minutes of the Regular Meeting of the Board of Directors

December 16, 2014

Board Members Present:
Daniel Greet
John Johnson
Dalin Winters
Joe Campbell
Cliff Alexander

Others Present:
Chris Davidson
Steve Harper
Calyn Hunt
Don Jackson
Mike Rosenthal

The meeting was called to order at 10:00 a.m. in the TCT WEST, INC., office in Cody, Wyoming after the pledge of allegiance and invocation.

Cliff Alexander made a motion to accept the November 19, 2014 Tri County minutes as amended. Daniel Greet seconded the motion. Motion passed unanimously.

There are no financials to report on.

Steve reported that in our last meeting that he presented numbers for the Tri County profits upon approval of the sale. He would like to make an amendment to the numbers for the Verizon gain. The number that was approved was 15.1 million for the book gain and not the tax gain.

Chris Davidson presented the CEO report. The number he received from AKT needs to be 17.1 million to be paid out for the Verizon gain if the sale goes through. Steve would like an amendment. John Johnson made a motion to accept the change as presented. Daniel Greet seconded the motion. Motion passed unanimously.

Cliff Alexander made a motion to have the Saturday meeting that they attended in Basin as a Board day. John Johnson seconded the motion. Motion passed with Joe Campbell voting against and Daniel Greet abstaining.

The Board looked over the Oversight Committee list to narrow it down. Calyn Hunt will contact the people left on the list and the top ten that agree to be on the committee.

Chris discussed with the Board a bonus for Steve.

The Board went into executive session. Chris Davidson, Steve Harper, Don Jackson and Calyn Hunt left the meeting.

Chris Davidson, Steve Harper, Don Jackson and Calyn Hunt re-entered the meeting.

The Board has agreed on bonuses for Calyn, Steve, Don and Chris. This will be a bonus from the Board for all they have done for them. Calyn -$5,000.00, Steve and Chris $15,000, and Don will receive $10,000 and a trip from last year that he didn't take or 2 trips. His choice for what bonus he would like.

Mike Rosenthal entered the meeting.

The Board discussed the meeting agenda for Saturday. The meeting will officially start at 10:00 am. Each office in Cody and Basin front offices will be open from 8-10 a.m. for people to drop off ballots. Ballot count will be at 10:30 a.m. If the sale has gone through members can cast their vote for the Oversight Committee ballots. We also have door prizes to give away to fill some time while the ballots are counted.

Mike Rosenthal will have documents to sign after the meeting on the 20th if the sale goes through.
Mike Rosenthal addressed the Board regarding the recording device that Joe Campbell was discovered to be using to record the November Board meeting. Mike Rosenthal suggested that he, as counsel for the Board and

Item 1

TCT, be allowed to listen to the recorder to determine if there had been any breach of Board policy, procedure or confidentiality agreements.

Cliff Alexander made a motion to turn the recorder over to Mike Rosenthal. Joe Campbell refused to give the recorder over. Joe will not allow the Board to have the recorder or listen to it.
Mike stated that if there is nothing to hide he should hand it over and allow the Board to confirm there was no breach of policy or confidentiality. Mike told Joe he would suggest handing it over and clearing his name, since his actions have created suspicion amongst the Board and management.

Dalin would like a motion for the Board to approve generally stating they condemn what Joe has done and have ho ties to Joe and anything he does going forward that might jeopardize the the sale or subject the Board to litigation from BHT for violation of confidentiality and non-solicitation terms of the various agreements.

The Board discussed destroying the voice recorder and going on with business.
The Board asked if Daniel could keep it and give it back after the 1st of the year. Joe Campbell refused to give it to him.

The Board discussed that counsel had recommended an approach and Mr. Campbell refused. The Board members discussed what Joe Campbell had done and said in the last Board meeting and that the Board had requested Joe hand over the voice recorder and that Joe had refused to give it up or allow anyone to listen to its contents.

Cliff Alexander made the motion to accept the resolution to condemn Joe's actions. John Johnson seconded the motion. Motion passed.

The Board offered Joe the opportunity for the tape recorder to be placed in safe keeping with a neutral party and sealed, in case it became relevant in any future litigation and thus not subject to being destroyed.  John Johnson made the motion. Cliff Alexander seconded the motion. Motion passed. Joe Campbell refused to give up possession of the recorder, saying he would only do so under a court's order.

Dalin then requested a Motion for a second resolution of the Board detailing the second offer for handling the recorder, the Board's desire to preserve the evidence and Joe's refusal to do so, which potentially places the Board in a difficult position regarding threatened litigation and that Joe be reprimanded for his actions.

Mike Rosenthal prepared a resolution for the resignation of the current Board of Directors if the sale is approved by the members and the closings occur on December 31 and January 2, as planned. Cliff Alexander made the motion to accept the resolution. John Johnson seconded the motion. Motion passed.

The Board discussed a resolution pertaining to the Board computers that the memory of each Board member's TCT computer needs to be backed up and saved on a company server for safekeeping in case of litigation involving the Board's activities  and the Board discussed making that back-up a condition before a Board member could retain their computer.  The age and value of the computers was discussed and the price was set at $0. Once their memories are downloaded to the TCT server for safekeeping, the Board will then be given back the computers and voluntarily delete TCT files from them. All directors need to acknowledge that they are still under NDA. Cliff Alexander made the motion to accept the resolution. John Johnson seconded the motion. The Board can keep their computers as long as nothing is deleted before the stored data and files are preserved.

Cliff Alexander made a motion for the meeting on Saturday to be paid. John Johnson seconded the motion. Motion passed unanimously

Chris Davidson reported that he has brought a cease and desist letter against Bill Loveland. Chris stated that this has gone too far.

The Board meeting adjourned.

_____
                                        Secretary

_____
Date Approved:

_____
                                        President

# Exhibit "B"
## to
# Affidavit of Joe Campbell



James M. Ragain
Joseph P. Cook
3936 Avenue B, Suite A2
Billings, MT 59102
Telephone: 406.651.8888
Facsimile: 406.651.8889

February 8, 2016

*Via e-mail dilorenzolaw@tctwest.net*

Robert DiLorenzo
Attorney at Law
P.O. Box 27
Emblem, WY 82422-0027

*Via e-mail ddhill@hilllawfirm.net*

Drake D. Hill
Hill Law Firm
2616 Carey Avenue
Cheyenne, WY 82001

Re:   Joe Campbell and Barbara Campbell, on behalf of themselves and as
      Representatives of a Class of Similarly Situated Persons v. Chris
      Davidson et al.; Case No. 28260; Fifth Judicial District Court, Park
      County, Wyoming

Dear Mr. DiLorenzo and Mr. Hill:

As you know, this firm, together with Greear Clark King, PC, represents several
defendants in the above-named litigation. Please be advised we believe electronically
stored information (ESI) to be an important and irreplaceable source of discovery
and/or evidence in this litigation. Thus, we want to provide you and your clients with
notice to ensure you/they preserve all electronic data and documents that in any way
pertain to the subject matter of the litigation. You and your clients should take
immediate steps to preserve any and all documents, evidence and electronic data you,
your clients, or those within your/ their control may have that relates to the subject of
the above-referenced lawsuit and that are the subject of this litigation.

If your clients have a data destruction policy or recycles disaster recovery tapes, they need to place a litigation hold on the destruction of data, tapes, or electronic media of any type that contain information that is pertinent to this litigation.  In addition, you and the clients you represent need to preserve any electronically stored information which may reside on networks, servers or individual work stations or hard drives that pertain to the claims the Plaintiffs have made in this litigation.  You/they should include within your litigation hold all text messages from any and all potential witnesses.

If your clients have a roll-off e-mail policy, such that after a certain period of time has expired or an e-mail box has reached a capacity limit e-mails are automatically deleted, your clients must stop this policy as it relates to any information pertinent to Plaintiffs' claims.

If information is contained on a computer or hard drive that is no longer used, you and your clients should put the computer or hard drive in a safe place until this case is over so that it is not thrown away.

If your clients have information on a current computer (both documents and e-mails on any network and on any person's individual hard drive) please make a CD copy of all files as they currently exist, that may contain information relevant to the current dispute, and send us a copy of the CD.  You will need to do this for each computer that has pertinent electronic information relating to any of the claims made by the Plaintiffs in the Complaint.  You should consider the litigation hold as applying to your clients' personal computers, tablets, phones, and/or other electronic devices to the extent they contain information relating to the subject matter of the litigation.

If your clients contend they have or are aware of pertinent ESI from a source or location which you believe is not "readily accessible because of undue burden or cost" to produce the information, please let us know the nature of the stored information, including its age and configuration, and why it would be unduly burdensome to produce it in this litigation.  We will need that information.  Please make that information part of the litigation hold so it is not destroyed.

Please document all steps you and your clients take in response to this request for the preservation of ESI and other evidence.  At some point in the litigation, we may be required to report to the Court all of the steps which you have taken to ensure that no potential ESI is lost or destroyed.

*Page 3*

If you have any questions, please feel free to give me a call.

Sincerely,

James M. Ragain
jim@ragaincook.com

12/6/2016

# Litigation Hold Letter

## Drake Hill

Tue 12/6/2016 1:49 PM

To:dave@greearclarkking.com <dave@greearclarkking.com>; rjarosh@hirstapplegate.com <rjarosh@hirstapplegate.com>; Richard A. Mincer <RMincer@hirstapplegate.com>; John Masterson <JMasterson@wsmtlaw.com>; Bill McKellar <BMcKellar@mtslegal.net>;

Cc:dilorenzolaw48@gmail.com <dilorenzolaw48@gmail.com>;

📎  1 attachments (81 KB)

TCT.Second.Litigation.Hold.Notice.pdf;

**All:  attached please find a litigation hold letter.  We have received word that TCT intends to delete email accounts at the end of the year, which has prompted us to send out this second litigation hold letter.**

**Drake**



DRAKE D. HILL                                                    (307) 638-9334

December 6, 2016

*Via Electronic Transmittal and*
*U.S. Mail*

William M. McKellar
McKellar, Tiedeken & Scoggin, LLC
P.O. Box 748
Cheyenne, Wyoming 82003-0748
    *Attorney for Chris Davidson and Steve Harper*

Robert C. Jarosh
Richard C. Mincer
Hirst Applegate
P.O. Box 1083
Cheyenne, Wyoming i82003
    *Attorneys for Board of Directors*

John A. Masterson
Wellborn Sullivan Meck & Tooley, P.C.
159 North Wolcott, Suite 220
Casper, Wyoming 82601
    *Attorney for Defendants Hathaway & Kunz and Michael Rosenthal*

David M. Clark
Greear Clark King, P.C.
P.O. Box 552
Worland, Wyoming 82401
    *Attorneys for Tri-County Telephone Association, Inc., Neil Schlenker, BHT Investments,*
    *LLC, BHT Holdings, Inc., and BHT Merger Corporation*

    Re:    *Joe Campbell and Barbara Campbell, on behalf of themselves and as*
          *Representatives of a Class of Similarly Situated Persons v. Chris Davidson et al.;*
          Case No. 28260; Fifth Judicial District Court, Park County, Wyoming

Dear Counsel for Defendants and Defendants:

As you know, on December 15, 2015, counsel for the Plaintiffs in the above-entitled action sent a "litigation hold" letter informing you of the need to retain and preserve all documents, electronic and other, in your possession. A recent notice to TCT customers indicated that TCT will be deleting all customer email accounts at the end of the year. This prompts me to ask you to explain why, during the course of litigation, TCT has chosen this time to be deleting all customer email accounts.

In light of the notice to TCT customers, we thought it advisable to remind you of your obligations to preserve, protect and retain all electronic and other evidence that may, in any way, pertain to the topics raised in the litigation. Your duty to preserve and protect all forms of electronic media includes email correspondence between employees, officers, directors and other potential witnesses who might have used TCT email addresses. Even Mr. Schlenker and those working with and for him could have been using TCT email addresses along with Mr. Greear and others.

Indeed, I do not see any safe way to delete emails of customers without risking losing evidence relating to the litigation. Customers may have been emailing employees during 2014 or at other times on topics relating to the takeover bid or on other topics that are relevant. The safer course, in my view, is to not follow through with deleting emails at the end of the year at least until discovery has been completed. Alternatively, you could do a back-up of all emails from 2006 forward for permanent keeping.

As you know, due to the above-referenced litigation and pursuant to W.R.C.P. 26(b)(4), we are required to inform you of your obligation to preserve all electronic data and documents that in any way pertain to the subject matter of the litigation. If you have not already done so, you should take immediate steps to preserve any and all documents, evidence and electronic data you or those within your control may have that relates to the subjects of the above-referenced lawsuit and that are the subjects of this litigation.

In the past, TCT has had a board policy of permanently retaining all company emails and voice mail messages. We hope that policy has been continued. The I.T. Department needs to place a litigation hold on the destruction of data, tapes, or electronic media of any type that contain information that is pertinent to this litigation. In addition, you and any company you represent or control needs to preserve any electronically stored information (ESI) which may reside on its network, servers or individual work stations or hard drives that pertain to the claims that the Plaintiffs have made in this litigation. You should include within your litigation hold all text messages from any potential witness.

If you or your company have a roll-off e-mail policy, such that after a certain period of time has expired or an e-mail box has reached a capacity limit e-mails are automatically deleted, you must ask your I.T. Department to stop this policy as it relates to the individual employees who have information pertinent to Plaintiffs' claims.

If information is contained on a computer or hard drive that is no longer used, put the computer or hard drive in a safe place until this case is over so that it is not thrown away. We may also want to have a mirror of that hard drive made.

2

If you have information on a current computer (both documents and emails on the network and on an employee's individual hard drive, if applicable) please make a CD copy of all files as they currently exist, that may contain information relevant to the current dispute, and send us a copy of the CD. You will need to do this for each employee who has pertinent electronic information relating to any of the claims made by the Plaintiffs in the Complaint. You should consider the litigation hold as applying to your personal computers, Ipads, and/or other personal devices as well to the extent they contain information relating to the subject matter of the litigation. Your obligations extend to all personal email accounts and personal devices that may contain information pertinent to the lawsuit.

If you or your I.T. Department determines that you and/or the company under your control has pertinent ESI from a source or location which you believe is not "readily accessible because of undue burden or cost" to produce this pertinent information, please let us know the nature of the stored information, including its age and configuration, and why it would be unduly burdensome to produce it in this litigation. We will need this information to disclose to the Plaintiffs. Please make this information part of the litigation hold so that it is not destroyed.

Please document all steps which you and your company take in response to this request for the preservation of ESI and other evidence. At some point in the litigation, we may be required to report to the Court all of the steps which you have taken to ensure that no potential ESI is lost or destroyed.

If you have any questions, please feel free to give me a call.

Very truly yours,

DRAKE D. HILL

3

# Exhibit "C"
## to
# Affidavit of Joe Campbell



DRAKE D. HILL                                                    (307) 638-9334

November 17, 2017

*Via Electronic Transmittal (email); Original by U.S. Mail*

Mr. Jon M. Moyers
490 N. 31st Street, Suite 101
Billings, Montana 59101

     Re:   *Tri County Telephone Association, Inc. v. Joe Campbell and*
           *Barbara Campbell;* Docket No. 17-CV-89-F; United States
           District Court for the District of Wyoming

Dear Jon:

    I am in receipt of your letter dated November 13, 2017.   As to the
computer that my office has been holding for evidence preservation purposes,
as we discussed several weeks ago, you were going to research firms or persons
who have expertise in computer forensics, and I was to do the same.   We
discussed getting back on the phone to review the results of our research.  I did
my research and found highly reputable firm in Houston. Dennis Williams of
Pathway Forensics is presently inspecting the computer and will be providing a
report within the next two weeks.

    Mr. Williams' curriculum vitae is attached to this letter along with an
excerpt about his firm.    Mr. Williams was with the Federal Bureau of
Investigation for 32 years and served in its computer forensic investigative
section. He is a person of stellar reputation.

    For the examination of the computer, I would encourage you to detail for
me, in writing, what you would like to have done in terms of the examination.
Please provide that detail for me very quickly as the examination is underway.
With the examination performed, and the report provided to you, you may or

2616 CAREY AVENUE, CHEYENNE, WY 82001  FAX: (307) 778-8361  EMAIL: DDHILL@HILLLAWFIRM.NET

may not feel that your client needs its own examination of the computer. The examination being performed is non-destructive and will preserve information on the computer. No examination of our clients' personal information on the computer will be undertaken.

Attached you will also find a proposed order governing assertions of confidential documents along the lines of what Judge Young has entered in the class action in state court. We object to blanket or categorical assertions of confidentiality, as contained in your draft of a protective order as not comporting with the Federal Rules of Civil Procedure and as not reflecting the fact that the owners of the Cooperative are the owners of the documents up to January 1, 2015. You will see that the treatment of this topic by Judge Young comports with the requirements of the Wyoming Rules of Civil Procedure which are patterned, as you know, from the Federal Rules of Civil Procedure. To comport with the rules, documents must be reviewed to justify why they would be treated confidentially upon satisfaction of the requirements for confidential treatment because confidential treatment is contrary to the openness of the court system and the standards must be followed for departures from the openness of the court system. My proposed form of order takes this into account and provides a workable system to handle claims of confidentiality.

I look forward to hearing from you on the computer and on my form of order on claims of confidentiality.

Very truly yours,

DRAKE D. HILL




# PATHWAY
# FORENSICS

Pathway Forensics LLC
14405 Walters Road, Suite 630
Houston, Texas 77014
Ph: (713) 401-3380

**Dennis Williams, EnCE**
Partner

Licensed Private Investigator, State of Texas #641582

dwilliams@pathwayforensics.com

---

Dennis Williams is a Partner of Pathway Forensics. He has over 32 years of law enforcement experience with the Federal Bureau of Investigation (FBI) and was the Director of the Greater Houston Regional Computer Forensics Laboratory (RCFL), a multi-agency task force. Dennis was an FBI certified Computer Forensics Examiner and a Certified Forensic Computer Examiner (CFCE) with the International Association of Computer Investigative Specialists (IACIS). He has conducted hundreds of computer forensic exams involving a variety of investigations including directing the search, capture, analysis, and litigation support of electronic evidence in the largest financial corporation collapse in Houston history. He provides expert witness services including reports and testimony.

Dennis successfully completed training as an Assessor for Digital Evidence for the American Society of Crime Lab Directors – Laboratory Accreditation Board (ASCLD/LAB) and is a former officer for the Texas Gulf Coast Chapter of the High Technology Crime Investigation Association (HTCIA). He is an EnCase Certified Examiner (EnCE) and a licensed Private Investigation Manager in the State of Texas.

## Professional History

**2009 to Present:  Partner, Pathway Forensics, LLC**
Computer forensics and electronic discovery services firm handling the acquisition, authentication and analysis of electronic evidence, including expert witness services

**2008 to 2009:  President, Computer Investigations, Inc.**
Started computer forensics practice and provided digital/computer forensics services.  Provided ASCLD and quality systems implementation consulting

**2005 to 2007:  Director, Greater Houston Regional Computer Forensics Laboratory**
Implemented and managed a multi-agency law enforcement task force to provide computer forensics services for criminal investigations in Southeast Texas. Conducted computer forensics exams and reviewed and approved exams performed by laboratory personnel

**2000 to 2005:  Special Agent, Computer Forensics Examiner, Federal Bureau of Investigation**
Performed computer forensics exams, searches and peer reviews.  Became an FBI certified Computer Forensics Examiner and obtained the Certified Forensic Computer Examiner certification

## Certifications

EnCase Certified Examiner (EnCE)
Private Investigations Manager, State of Texas



## Education and Training

Bachelors of Science - Accounting, University of Maryland
FBI Computer Forensic Examiner Boot Camp
International Association of Computer Investigative Specialists (IACIS) Basic Training
National White Collar Crime Center Basic Data Recovery and Analysis
National White Collar Crime Center Advanced Data Recovery and Analysis
Microsoft Advanced Forensics
Certified FBI Unix/Linux Forensic Examiner
George Mason University 2001 Symposium on Computer Forensic
Ilook Training (Computer Forensic Software)
Total Seminars Net+ Training
Total Seminars A+ Training
AccessData Forensic Toolkit Training
VMWare Software Training
Guidance Software Encase Forensic Training
Management training, Northwestern University, Kellogg School of Management

## Affiliations

Laboratory Accreditation Board Assessor, American Society of Crime Lab Directors
Member, Texas Gulf Coast Chapter of High Technology Crime Investigation Association (HTCIA)
Member, International Association of Computer Investigative Specialists (IACIS)
Member, Infragard - Houston Chapter

## Expert Witness Testimony

*Reveal Energy Services, Inc. and Statoil Gulf Services, LLC v. Matthew A. Dawson, Jin Z. Dawson, and Axiom Genesis Inc.*, Case No:4:17-CV-000459, United States District Court, SDTX, Houston Division, August 18, 2017.

*Crescent Directional Drilling, L.P. v. Bryson Varner, Von Directional Services, LLC, et al.;* Case No: 2017-24237, 129th Judicial District of Harris County, Texas, April 28, 2017.

*Jeff Russo v. M-I SWACO, National Oilwell Varco (Third Party Defendant);* Case No: 2014-18432, 189th Judicial District Court of Harris County, Texas, February 2, 2017 and February 23, 2017.

*Affiliated Mortgage Company v. Envoy Mortgage, Ltd., et al.;* Case No: 13-0422, Fourth Judicial District Court for the Parish of Ouachita, Louisiana, September 1, 2016.

*In Re: Atlas Acquisitions, LLC, et al.,:* Misc. Case No: 16-00302, United States Bankruptcy Court, SDTX, Houston Division, May 16, 2016, July 26, 2016 and July 29, 2016

*Juana Perez 1A, et al., v. Dole Food Company, Inc., et al.,;* Case No. BC412620, Superior Court of the State of California for the County of Los Angeles, February 10, 2016

*Drummond Company, Inc. v. Terrence P. Collingsworth, et al.;* Case No. 2:11-cv-3695-RDP-TMP, U.S. District Court, Northern District of Alabama, Southern Division, June 30, 2015 and February 16, 2016



*Visible Changes, Inc. v. Stephanie L. Wiley;* Arbitration No. 2015-32365 before Judge John T. Woolridge, Houston, Texas, June 29, 2015.

*Cardone Industries, Inc. v. Joel Farina & BBB Industries;* Cause No. 017-271617-14 in the 17th Judicial Court, District Court of Tarrant County, Texas, May 5, 2015

*Industrial Specialists, LLC. v. Troy Strange, Thomas Vaughn, et al.;* Cause No. 13-CV-0951 in the 122nd Judicial District, District Court of Galveston County, Texas, May 13, 2014

*Daily Instruments Corp. d/b/a Daily Thermetrics v. Eric Heidt, WIKA Instrument, LP, WIKA Process Solutions, LP, and Gayesco International, LP;* Cause No. 4:13-cv-2189; United States District Court for the Southern District of Texas, Houston Division, January 28, 2014

*Amistco Separation Products, Inc. v Robert Lasser;* Cause No. 2013-39247 in the 125th Judicial Court, District Court of Harris County, Texas, July 25, 2013

*Dr. Willis J. Pumphrey, Jr. v Worldwide Lending Fund, LLC, Ali Choudhri, et al.;* Cause No. 2012-5704 in 333rd Judicial Court, District Court of Harris County, Texas, October 22, 2012

*Vortex Ventures, Inc. v Proven Technologies, LLC and D. Conrad Pearson, Jr.;* Cause No. 2011-59099 in the 11th Judicial Court , District Court of Harris County, Texas, August 1, 2012

*Southwest Water Company v. Haley, Jeffrey et al.;* in the 215 Judicial Court, District Court of Harris County, Texas, April 16, 2012.

*Hunter Buildings & Manufacturing, L.P., et al., v MB Industries, LLC, et al.;* Cause Number 2008-50193 in the 215th Judicial District Court of Harris County, Texas, October 11, 2011

*Denise Marie Jacobsen v James Matthew Jacobsen;* Cause No. 10-03-02543-CV in the County Court at Law No. 1 in Conroe, Montgomery County, Texas, March 11, 2011

*United States of America v Santiago Damon Wesley;* 4:01-cr-00738 in the Southern District of Texas, February 2002 (Bank Fraud, Aiding and Abetting, Laundering of Monetary Instruments)

## Speaking Engagements

"What Every Investigator Needs to Know About Computer Forensics", Energy Security Council, Houston, Texas

"What Financial Experts Need to Know about Computer Forensics", Forensic and Valuation Committee, Houston Society of CPAs, Houston, Texas

"Collection & Processing of ESI", Expert & Attorney Viewpoints on Forensic Services, Forensic Expert Witness Association (FEWA), Houston Chapter



"Who's been in the IP Cookie Jar", A forensic perspective on Intellectual Property Theft, Houston Association of Litigation Support Managers, Houston, Texas

"Decoding Electronic Evidence", 12th Annual Business Valuation, Fraud & Litigation Services Conference, Virginia Society of Certified Public Accountants (VSCPA), Richmond, Virginia

# Exhibit "D"
## to
## Affidavit of Joe Campbell

STATE OF WYOMING    |   SS            IN THE DISTRICT COURT

COUNTY OF PARK    |                FIFTH JUDICIAL DISTRICT

JOE CAMPBELL, BARBARA CAMPBELL,
ON BEHALF OF THEMSELVES AND AS
REPRESENTATIVES OF A CLASS OF
SIMILARLY SITUATED PERSONS,

             Plaintiffs,

vs.

                                     Civil No. 28260

CHRIS DAVIDSON, TRI-COUNTY
TELEPHONE ASSOCIATION, INC.,
A WYOMING CORPORATION, DALIN
WINTERS, CLIFFORD ALEXANDER,
J.O. SUTHERLAND, DANIEL GREET,
JOHN K. JOHNSON, NEIL SCHLENKER,
BHT INVESTMENTS, LLC, A
WYOMING LIMITED LIABILITY
COMPANY, BHT HOLDINGS, INC., A
WYOMING CORPORATION, BHT MERGER
CORPORATION, A WYOMING
CORPORATION, HATHAWAY & KUNZ, P.C.,
A WYOMING PROFESSIONAL
CORPORATION, MICHAEL ROSENTHAL,
ESQ., STEVE HARPER, AND DOES 1
THROUGH 99, INCLUSIVE,

             Defendants.

PATRA LINDENTHAL
Clerk of District Court

FILED   OCT 19 2017

by _____
                Deputy

---

# MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

---

Drake D. Hill (Wyo. Bar #6-3106)
Hill Law Firm, LLC
2616 Carey Avenue
Cheyenne, Wyoming 82001
(307) 638-9334 (office)
Email: ddhill@hilllawfirm.net

Robert J. DiLorenzo (Wyo. Bar #6-3316)
Attorney at Law
P.O. Box 27
Emblem, Wyoming 82422
(307) 762-3315
Email: dilorenzolaw48@gmail.com

*Counsel for Plaintiffs*

# I. INTRODUCTION

In the original hearing in this case, counsel for the Plaintiffs stated that there were threshold statutory issues that void the transaction.  This motion for partial summary judgment addresses those issues.

Courts are obligated to void transactions that violate statutory requirements. As the Delaware courts have recognized, "[a] merger that fails to comply with the statutory requirements for a merger is void *ab initio*." *Arnold v. Society for Sav. Bancorp, Inc.,* 1995 WL 376919, *aff'd* 678 A.2d 533 (De. 1996).  The general rule is stated as follows:

> As a general rule, an illegal contract is unenforceable; and in this regard, a contract which violates or contravenes a constitution, statute, or regulation may be illegal, invalid, unenforceable or void.  If an act is prohibited by statute, an agreement in violation of the statute is void.  Stated another way, a contract which cannot be performed without violation of applicable law is illegal and void.    17A Am. Jur.2d, *Contracts*, §223, p. 232 (2016).

Wyoming follows this rule.  A contract that is illegal because it violates substantive law is void.  *Takahashi v. Pepper Tank & Contracting Co.,* 131 P.2d 339 (Wyo. 1942).  As the Wyoming Supreme Court has found, courts have the duty and the power to declare void and unenforceable contracts made in violation of law or in contravention of the public policy of the state.[1]  Contracts are void as

---

[1] *See e.g., Takahashi v. Pepper Tank & Contracting Co.,* 58 Wyo. 330 (1942)(An agreement having an illegal object is invalid and will not be enforced applies to contracts of sale, which may be illegal because of its immoral purpose or because it violates some positive law, or is

being contrary to public policy when they are contrary to what the legislature or judicial decision has declared to be the public policy, or when the contracts manifestly tend to injure the public in some way.[2] Even within the last several months the Wyoming Supreme Court has repeated the rule that a contract is void if seeking to effectuate a prohibited transaction. *Anadarko Land Corp. v. Family Tree Corp.*, 2017 WY 24, 389 P.3d 1218, 1223 (2017). As the Wyoming court has held, a void contract is a nullity, making it ineffective to transfer ownership and may be attacked by anyone whose interest is adversely affected by it. *Id.* Courts in other jurisdictions have a history of voiding mergers using their equitable powers for the purpose setting aside or enjoining tainted transactions. *First Union National Bank v. Quality Carriers, Inc.*, No. 2634 (1st Jud. Dist., Penn. 2000)(if the argument for voiding the merger were made by the shareholders, the request would be granted), copy attached hereto as **Exhibit "A"** (*citing SSMC, Inc., N.V. v. Steffen*, 102 F.3d 704 (4th Cir. 1996), *citing Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385 (1970).[3]

---

contrary to public policy. For the same proposition as held by other state courts, *see Transocean Enterprise, Inc. v. Ingalls Shipbuilding Inc.*, 2009 WL 3030967 (Miss. 2009).

[2] *First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2015 NMSC-004, 345 P.3d 310 (N.M. 2015).

[3] *See also, Nelson v. All Amer. Life & Fin. Corp.*, 889 F.2d 141 (8th Cir. 1989); *Albright v. Bergendahl*, 391 F.Supp. 7545 (D. Utah 1974); *Arnold*, 1995 WL 376919, at *2; *Security Trust Co. v. Dabney*, 372 S.W.2d 401 (Ky. 1963); *Louisiana Ins. Guar. Ass'n v. Bernard*, 393 So.2d 764 (La. Ct. App. 1980); 19 C.J.S. *Corporations* § 799c (noting that "[i]f a shareholder feels that merger was wrong, he may sue for conversion or rescission").

In the transaction at issue here, first, the Wyoming statutes bar transactions purporting to transfer or otherwise extinguish cooperative membership interests. *See* Wyo. Stat. § 17-19-611 and § 17-19-622. The Defendants purported to purchase and extinguish all membership interests, which could not be done.

Second, Wyoming law bars a cooperative utility from becoming a for-profit corporation, which is what this transaction purported to do. Wyo. Stat. § 17-19-1807(a)(iv).

Third, the Wyoming Cooperative Utilities Act carefully prescribes how voting shall be conducted when disposing of a substantial portion of the cooperative utility's property. Here, statutory requirements on how voting must be conducted were ignored.

Two organizing principles guide the discussion in this brief. First, cooperatives, and cooperative utilities receive heightened statutory protection because they are formed as non-profits in the public interest as and for the public good, not for private profit motives. Next, courts have always set aside contracts that violate public policy, and in particular, public policy codified in statute.

A ruling on the instant motion will expedite the litigation. An early ruling on the questions presented here will obviate a great deal of discovery and will significantly narrow the issues to be tried.

## II. STATEMENT OF UNDISPUTED FACTS

Before the takeover in 2015, the owners of the Cooperative held ownership of a cooperative utility regulated under both the Wyoming Nonprofit Corporations Act and the Wyoming Cooperative Utilities Act.[4]  Both the Wyoming Nonprofit Corporations Act and the Wyoming Cooperative Utilities Act contain restraints on alienability, restrictions on mergers, disclosure requirements, and voting safeguards.[5]

The bylaws of the Cooperative expressly prohibited any transfer of a membership interest except within the same household.[6]  Pursuant to this prohibition, the bylaws did not permit a cooperative-wide buyout of membership interests.  This is exactly what the Defendants purported to do in the transaction under review in this motion.[7]

The Wyoming Cooperative Utilities Act carefully prescribes how voting shall be conducted when disposing of a substantial portion of the cooperative utility's property.  The statutorily required ninety-day (90) notice was not given

---

[4] Aff. J. Campbell, ¶ 3; Ex. "B."

[5] Attached as **Exhibit "C"** to this Motion, the Court will find a full copy of the Wyoming Nonprofit Corporations Act, Wyo. Stat. § 17-19-101 et seq., and, as **Exhibit "D,"** the Wyoming Cooperative Utilities Act, Wyo. Stat. § 17-20-101 et seq.

[6] *See* Exhibit 1 (bylaws) to Aff. J. Campbell, ¶4; Ex. "A." Section 1.2(1) of the Tri County Bylaws states, "[n]o membership in the cooperative shall be transferable, except on the books of the cooperative and as provided for in these bylaws."  Section 1.2(4) only permits transfers between persons in the same household or within an entity owned by the member.

[7] *See* September 19, 2014 Merger Agreement 1.4(d) stating that any payment is made in full satisfaction of each member's membership interest.  This purports to be a buyout and termination of all membership interests. *See* Exhibit 18 to Aff. J. Campbell, ¶4; Ex. "B."

before voting took place and voting did not take place at a meeting of the owners as the statute requires.[8]   Rather, in disregard of the statute, within 24 hours of announcing the deal, the buyer sent solicitors door-to-door to obtain affirmative votes, paying $100 for each vote collected.[9]

The Defendants have admitted breach of the voting safeguards. In a December 15, 2016 article published in the *Northern Wyoming Daily News* (Worland), Defendant Chris Davidson stated that he had originally proposed having the Cooperative's employees collect votes, but in the end, the buyer, Schlenker, "did hire some people to visit members and collect votes."[10] This process denied informed voting in violation of statute and codified public policy.[11] In a January 5, 2017 article appearing in the *Basin Republican Rustler*, Davidson stated that he was told by Schlenker that "solicitors were given $100 for every vote cast, yes or no."[12] The testimony of those soliciting votes and those from whom votes were solicited confirms that $100 was paid for each vote, but the $100 was for "yes" votes, contrary to Davidson's characterization.  In the affidavits attached hereto as **Exhibits "E," "F," and "G."** Neil Schlenker paid $100 for every "yes" vote.  Those who were solicited, as the attached affidavits show, were told that the

---

[8] Aff. J. Campbell, ¶¶ 24-25; Ex. "B."
[9] *Id.*
[10] *Lawsuit filing somewhat of a surprise for TCT CEO,* Northern Wyoming Daily News, December 15, 2016—attached as Exhibit 12 to Affidavit of J. Campbell, ¶ 25; Ex. "B."
[11] Aff. J. Campbell, ¶ 25; Ex. "B."
[12] *More Details Emerge in TCT Lawsuit,* Basin Republican Rustler, January 5, 2017, attached as Exhibit 13 to J. Campbell, Ex. "B."

transaction was a "great deal" and a "once in a lifetime" deal.  The door-to-door solicitors did not give the owners literature, valuation information, or disclosure documents, but rather, were "extremely persistent and insistent" that the owner vote "yes."  **Exhibits "F" and "G."**

Substantially all voting took place without the benefit of any knowledge of the value of the cooperative or its income.[13]  In an October 9, 2014 email to Dalin Winters, long before the statutorily required meeting of the owners was to be held on December 20, 2014, Chris Davidson stated that, as of October 9, 2014, 490 "yes" votes had already been obtained and that there were 4-5 no votes.[14]  In the September 19, 2014 mailing to the members, the board of directors stated that the purpose of the December 20, 2014 meeting of the members was only to *count* the votes and that all votes were due before the meeting began.[15]  However, the statute required voting to be held *"at"* the meeting of the owners, which affords the 90 day notice prescribed by the statute.

### *Understanding the Agreements at Issue*

The takeover was structured under two agreements.  The first agreement purchased the outside investment portfolio of the Cooperative.  The agreement purchasing those investments was entitled "LLC Membership Interest Purchase

---

[13] Aff. J. Campbell ¶ 26 ; Ex."B;"  *See also* Aff. Jim French, an owner of the Cooperative; Ex. "F."
[14] Ex. 14 to Aff. J. Campbell ¶ 26; Ex." B."
[15] Ex. 15 to Aff. J. Campbell ¶ 26; Ex. "B."

6

Agreement."[16]  Under that agreement, the "buyer" took over the investments for a payment of $19.3 million.  The most valuable of the investments purchased was an investment in Verizon Wireless in which the Cooperative, through a put option, had the right to sell the investment to Verizon for a minimum price of $19.3 million.  Defendant Chris Davidson, in a June 26, 2014 meeting, stated that this asset would be re-sold for $32 million.[17]

The other agreement relating to the takeover related to acquiring the assets of the Cooperative itself, including all utility property.[18]  This agreement was entitled "Definitive Agreement and Plan of Merger."[19] Despite the reference to "merger," the owners of the Cooperative would not survive the transaction, but rather, their interests were extinguished.[20]  The payment made to the owners pursuant to this agreement was a capital credit payment of $9 million of the nearly $13 million in cash on hand in the Cooperative's bank accounts.[21]  The $9 million was cash on hand that the owners already held.[22] BHT and Schlenker literally used

---

[16] "LLC Membership Interest Purchase Agreement" attached as Exhibit 16 to Affidavit of J. Campbell, Ex. "B."
[17] Exhibit 17 to Aff. J. Campbell ¶27; Ex. "B."
[18] Exhibit 18 to Aff. J. Campbell ¶28; Ex. "B."
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

the owners' own cash to purportedly extinguish the owners' interests in the Cooperative and paid nothing to take over ownership of the Cooperative.[23]

To summarize, BHT paid $19.3 for investments whose value far exceeded this payment.[24]   BHT paid nothing for the members' equity in the Cooperative and took control over millions of dollars in cash remaining in the Cooperative.[25]   The Defendants never told the owners that the owners would only be receiving their own cash.[26]   Rather, the buyer gave the impression that it was paying the $9 million, when in fact it was the owners' money being paid to the owners.[27]

## III. STANDARD OF REVIEW

The propriety of granting a motion for summary judgment depends upon the correctness of the dual finding that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law.[28]   The standard of review as pertaining to the construction of statutes is well known.   In interpreting statutes, the court's primary consideration is to determine the legislature's intent.[29]   In ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered

---

[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] Aff. J. Campbell ¶ 29; Ex. "B."
[27] *Id.*
[28] *Schumway v. Worthey,* 2001 WY 130, 37 P.3d 361, 365 (Wyo. 2001)(citing *Williams Gas Processing—Wamsutter Company v. Union Pacific Resources Company,* 2001 WY 57, ¶ 11, 25 P.3d 1064, ¶ 11 (Wyo. 2001).
[29] *Id.* at 365.

and construed in harmony.[30] Wyoming courts begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. Statutes are to be construed as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in *pari materia*.[31] There is no resort to rules of statutory construction when the statutes under review, as in this case, are clear and unambiguous.[32]

In this case, the dual requirements of no genuine issue of material fact and disposition through matters of law are present. In an environment where no material facts on the pertinent questions exist, the application of the plain and unambiguous provisions of Wyoming statutes show that the transaction violated the Wyoming statutes, and, as a matter of law, those statutory violations require that the transaction be voided. The transaction must be voided as a whole, returning the core assets of the Cooperative to the owners as well as the investments that were held by the Cooperative with later determinations on disgorging of profits and other damage claims.

---

[30] *Id.*
[31] *Id.*
[32] *Id.*

## IV. ARGUMENT

## (A) THE TRANSACTION VIOLATED WYOMING LAW

### (1) *Wyoming statutes bar transactions purporting to transfer or otherwise extinguish cooperative membership interests*

Wyoming statutes bar transactions purporting to transfer or otherwise extinguish cooperative membership interests. *See* Wyo. Stats. § 17-19-611 and § 17-19-622. Section 611 could not be clearer in its bar on transfers:

(a) Except as set forth in or authorized by the articles or bylaws, no member of a mutual benefit corporation may transfer a membership or any right arising therefrom.

The Cooperative's bylaws expressly prohibit any transfer of a membership interest except within the same household.[33] The Defendants allege that the members (owners), without any payment other than their own money, transferred their interests and thereby extinguished their interests. With a statutory bar on transfer, this was not legally possible. Stated differently, the statutory prohibition operating through the bylaws, does not permit a buyout of membership interests. This is exactly what the Defendants purported to do, which was unlawful.[34]

---

[33] Section 1.2(1) of the Tri County Bylaws states, "[n]o membership in the cooperative shall be transferable, except on the books of the cooperative and as provided for in these bylaws." Section 1.2(4) only permits transfers between persons in the same household or within an entity owned by the member. Exhibit 1 to Aff. J. Campbell; Ex. "B."

[34] *See* September 19, 2014 Merger Agreement 1.4(d) stating that any payment is made in full satisfaction of each member's membership interest. This purports to be a buyout and termination of all membership interests. Exhibit 18 to Aff. J. Campbell; Ex. "B."

Likewise, Section 622 contains a clear and unambiguous bar on transfer or extinguishment of cooperative member interests. In the transaction at issue, the Defendants purported to purchase and extinguish all membership interests. Section 622 prohibits a mutual benefit corporation (cooperative) from purchasing a membership interest except when a member resigns or whose membership interest is terminated pursuant to the conditions set forth in or authorized by its articles or bylaws.[35] Under the bylaws at issue in this case, a membership interest could be terminated if the member resigned or was terminated for cause (misconduct) providing for due process. The bylaws of the Cooperative did not permit the purchase of a membership interest and the bylaws did not permit the transfer of interests.[36] The Defendants violated this statutory prohibition by purporting to acquire and terminate the members' (owners') interests.

**(2)    *The "Merger" at issue violates Wyoming Statutes***

It would be a misnomer to accept the characterization of the transaction at issue as a "merger." The transaction was an acquisition of, and termination of, the owners' interests and conversion of the Cooperative from a non-profit to a for-profit entity.

---

[35] Cooperatives are mutual benefit corporations as defined by Wyo. Stat. § 17-20-202 (Cooperative Utilities Act).

[36] An individual member may withdraw or may be expelled for cause. *See* bylaws Section 1.5(1) and 1.5(3). *See also* Wyo. Stat. § 17-19-621(a).

11

With this caveat in mind, taking the Defendants' description of the transaction as a merger (as labeled in the "merger" agreement), Wyo. Stat. § 17-20-1106 narrowly prescribes the circumstances under which a cooperative utility may merge. A cooperative utility may only merge with an entity if the merger is permitted by the law of the state or country under whose law the entity is organized. A cooperative utility may acquire a private for-profit corporation through merger with the cooperative utility being the surviving entity continuing forward as a non-profit concern. Wyo. Stat. § 17-20-1103 also allows two or more cooperative utilities to merge. Wyo. Stat. § 17-19-1101 allows the cooperative to merge with any mutual benefit corporation if no other provision of state law is violated.

With the kind of *allowed* mergers kept in mind, as reviewed above, the next step is to consider the kind of mergers that are expressly *prohibited*. To the point here, Wyoming law expressly bars a cooperative utility from becoming a for-profit corporation. Wyo. Stat. § 17-19-1807(a)(iv), from the section entitled "Transition of mutual benefit corporations to for profit status," prohibits cooperative utilities from becoming for-profit companies. Section 1807(a)(iv) provides that transition from non-profit to for-profit status may only occur if

> the corporation is **not** a cooperative utility pursuant to the Wyoming Cooperative Utilities Act. (Emphasis added).

Here, the corporation was a cooperative utility pursuant to the Wyoming Cooperative Utilities Act.[37] As such, the statute prohibited the conversion of the cooperative utility into a for-profit corporation, which is what the Defendants unlawfully purported to do in this case.

**(3)** ***Had this been a lawful transaction, which it was not, proper voting procedures would be required***

The Wyoming Cooperative Utility Act carefully prescribes how voting shall be conducted when disposing of a substantial portion of the cooperative utility's property. Wyo. Stat. § 17-20-1201 states that "a cooperative utility shall not sell, lease or otherwise dispose of any substantial portion of its property, when the action is not in the regular course of activities, except as provided in this section." (emphasis added). Section 1201 defines how the vote must be conducted to assure integrity of the process and informed consent:

> (b) Before a meeting is held to vote on approval of disposition of all or a substantial portion of cooperative utility property, the board of directors shall:
>
> ***
>
> (b)(ii) Notify all cooperative members, at least (90) days in advance, **of a meeting to vote** on disposition of cooperative utility property, enclosing a summary of the proposals for disposition of the property with the notice, and make available to any member the full proposal for inspection and copying at the principal office of the cooperative; and

---

[37] Aff. J. Campbell, ¶ 3; Ex. "B."

\*\*\*

(c) A two-thirds (2/3) affirmative vote of all the members of the cooperative utility is required for any sale or disposition under this article.

Strict adherence to the statutory procedure is required.[38]  From a review of the statute, the required procedure for voting under the Wyoming statutes is a simple check list that could easily be followed, and must be followed:

    ✓ First, a 90 days' minimum notice before any voting;

    ✓ Second, a summary of the proposals enclosed with the notice;

    ✓ Third, voting at a meeting of the members, not by mail-in ballot or other means; and

    ✓ Fourth, a (2/3) affirmative vote of all members at the meeting of the members.

The first requirement is that no action be taken relating to voting for ninety days. Such a statutory provision is called the notice period.   The Defendants violated this requirement.   Voting took place within 24 hours of the announced sale; voting did not take place *after* expiration of the ninety day notice period.[39]

---

[38] The Plaintiffs also assert that, had a transaction of the kind presented in this case been possible, which it was not, the Defendants violated Wyo. Stat. § 17-20-1201(b).  This section requires:  1) two current independent valuations; 2) analysis of the specific transaction being voted on; and 3) an analysis pertaining to the impact to the owner's equity and not merely the value of the assets.  Two independent valuations were not performed, no analysis was ever performed of the specific transaction being voted on, and no valuation analysis was ever performed for how the transaction would impact the equity of each owner.

[39] Aff. J. Campbell, ¶¶ 24-25; Ex. "B."

14

To compound matters, voting did not take place at a meeting.[40]   Rather, in disregard of the statute, the buyer immediately sent solicitors door-to-door to obtain votes, paying a $100 inducement fee for each affirmative ballot collected. The Defendants' actions could not have been more deliberate and purposeful. Their violations of the statutory voting requirements enabled them to manipulate voting—taking votes of uninformed owners, promoting the transaction in the door-to-door campaign without revealing the details of the transaction, and applying financial pressure to vote for the transaction.   There was also no chain-of-custody of the unapproved ballots, meaning that votes may well have been tampered with. In short, all assurances of the integrity of the voting process sought to be secured by the statute were rejected.   To highlight the role of the lawyers, Defendant Rosenthal openly stated that following the voting procedures under the bylaws would be "impractical."[41]

Significantly, substantially all voting took place without the benefit of any knowledge of the value of the cooperative or its income.[42]   In an October 9, 2014 email to Dalin Winters, Chris Davidson stated that 490 "yes" votes had already been obtained and that there were 4-5 no votes.[43]   In the October 15, 2014 mailing to the members, the board of directors stated that the purpose of the December 20

---

[40] *Id.*
[41] Aff. Joe Campbell ¶23; Ex. "B."
[42] Aff. Joe Campbell ¶ 26; Ex. "B;" *See also* Aff. Jim French, A cooperative member, Ex "F."
[43] Exhibit 14 to Aff. J. Campbell; Ex. "B."

meeting of the members was to only count the votes and that all votes were due before the meeting began.[44]

Along with other elements not met, the third element was also not honored. The members did not vote at the meeting after the statutory ninety-day's written notice and no other mechanism of voting is permitted by the Wyoming Cooperative Utilities Act. The provision for mail-in ballots found in Wyo. Stat. § 17-19-1103(e) of the Wyoming Nonprofit Corporations Act is intentionally absent from of the Wyoming Cooperative Utilities Act, but nonetheless, the Defendants conceived a new procedure nowhere authorized by statute or the bylaws for collecting the ballots, i.e., through door-to-door solicitation to influence and control voting through the amount and kind of information owners were given and creating the false impression that the transaction was "the deal of a lifetime."[45]

The bylaws of the Cooperative were obviously drawn to comply with the statutory requirements. Section 12.1 of the bylaws requires that members vote in person and not by proxy at a meeting to approve a sale of a substantial portion of cooperative property. The bylaws otherwise expressly distinguish a vote in person from a mail-in ballot.[46] *See* Section 4.2(3) of bylaws.[47]

---

[44] Exhibit 15 to Aff. J. Campbell; Ex. "B."

[45] *See* Exhibits "F" and "G" attached hereto.

[46] Exhibit 1 to Aff. J. Campbell; Ex. "B." Even if the statutes had allowed for mail-in ballots where a disposition of substantially all assets would occur, which it does not, the bylaws required that the ballots be sealed and mailed to a certified public accountant, or another professional agreed to by the elections committee, for safekeeping until the commencement of the annual

16

*(4)     The Policy Rationale for Protections in the Cooperative Utilities Act*

Cooperatives operate under a unique charter.  By their very nature, they exist to serve the public interest and the mutual needs of their members.  They are not for-profit corporations.  Under cooperative principles, their charters demand that services be provided on a cost basis.[48]   All excess money beyond operating expenses, to the extent possible, must be distributed to the members who are also owners of the cooperative.[49]  Two of the specific conditions the IRS requires of tax exempt cooperatives are (1) the ban on closed records; and (2) the bar on excessive reserves.[50]   A third condition to tax exempt status is that cooperatives may not forfeit member assets.[51]

The Wyoming Nonprofit Corporations Act and the Wyoming Cooperative Utilities Act are built upon the protection of the members (owners).  The owners of cooperatives are often elderly and do not have expertise in finance or corporate law and are reliant on the cooperative's provision of services.  They are not like

---

meeting to be opened by the elections committee.  Even had mail-in ballots been allowed under these circumstances, the integrity of the ballots was compromised as the chain of custody was broken.

[47] Exhibit 1 to Aff. J. Campbell; Ex. "B."

[48] U.S. Congressman Jim Cooper, *Electric Cooperatives: From New Deal to Bad Deal?* 45 Harvard Journal on Legislation 335, 360 (2009) attached for convenience as **Exhibit "I."**

[49] *Id.*

[50] *Id.*

[51] *Id.*

sophisticated investors in publicly traded corporations and their frame of reference, assumptions, and bases of trust are very different.

Every provision of the Wyoming statutes from governance, to voting security, to restraints on alienability, to disclosure obligations, to judicial enforcement of owner rights, seeks to protect rural communities from outside abuses that may threaten the provision of essential services. The most basic assumption of a cooperative, and the one proscribed by the Wyoming statutes, is that cooperatives are not created to be taken over.

Because cooperatives are so vital to the public interest, are not created on private market principles, and are not created to be taken over, Wyoming statutes bar transactions purporting to transfer or otherwise extinguish cooperative membership interests. The public policy of this statutory bar is that cooperative utilities are non-profits serving the public interest of providing cost-based services. These objectives would be defeated by a for-profit, market-based concept in which the most basic concept is that services are not provided on a cost basis, but that the entity should yield the greatest profits the market will allow. A non-profit simply operates under different principles than a for-profit entity, and the Wyoming statutes seek to protect the former against the latter. That is also why Wyoming law expressly bars a cooperative utility from becoming a for-profit corporation, which is what this transaction purported to do. So too, the Wyoming Cooperative

Utility Act carefully prescribes how voting shall be conducted when disposing of a substantial portion of the cooperative utility's property. Those statutes demand notice of the proposal with disclosure of the details of the transaction, and time to investigate and reflect on the proposal before voting occurs.

### (5)   *The Defendants Knew That Their Actions Were Unlawful*

The Defendant officers and directors and Defendant TCT knew that their actions violated Wyoming statutes. In 2009, in a letter from the Cooperative board to Neil Schlenker, the board stated that, "BHT/you cannot legally purchase "all of the outstanding membership interests of TCT" because of prohibitions on BHT/you doing so in the Bylaws and the Wyoming Cooperative Utilities Act."[52] The board further stated that, "The Board does not have the legal power or authority (i) to sell any or all the members' interest in the Company to BHT/you or (ii) to require, or cause, all or any of the members to sell their membership interests in the company to BHT/you."[53]   Accordingly, the Defendants knew that membership interests could not be purchased.

In the September 23, 2016 hearing, in an admission against interest, BHT attorney David Clark described the transaction to the Court. Mr. Clark stated that, "the plaintiffs, they talk about all of those assets that were owned by the plaintiffs. Well, the plaintiffs didn't own those assets, and neither do the BHT entities. Those

---

[52] Exhibit 5 to Aff. J. Campbell; Ex. "B."
[53] *Id.*

19

assets were owned by TCT, and they're now owned by TCT."[54] If the assets were not owned by the owners of the Cooperative, then who owned them? Under Wyo. Stat. § 17-20-102, *et. seq.* the Cooperative was a member-owned Cooperative. The member-owned Cooperative is now a for-profit corporation owned by somebody – namely, its shareholders Schlenker and BHT reaping millions of dollars of profits each year. Wyo. Stat. § 17-19-1807 bars converting from a member owned cooperative utility to a private for-profit entity in which the cooperative owners' interests are extinguished.

Continuing, Mr. Clark stated that "What the plaintiffs did own was a membership interest in the cooperative utility. That membership interest was for fair consideration as set forth in the contracts attached to this complaint purchased for some $28,000 in redemption of their interests."[55] **Exhibit "H."** Mr. Clark described the exact statutory violations of Wyo. Stat. § 17-19-611 and Wyo. Stat. § 17-19-622 that are set forth in this motion—restrictions on transfer, purchases, or redemption of membership interests.

Defendant Michael Rosenthal and Defendant Hathaway and Kunz were architects of the deal with counsel for BHT and Schlenker in drafting transaction documents that violated Wyoming law. Further, Rosenthal ensured that the owners were kept ignorant of the transaction details. In one such example, Rosenthal

---

[54] September 23, 2016 hearing transcript, pg. 35-36, Exhibit "H."
[55] *Id.*

wrote an October 27, 2014 letter to Cooperative owner Bill Loveland responding to Mr. Loveland's letter requesting disclosure of corporate records.[56] In the letter, Mr. Rosenthal referenced Wyo. Stat. § 17-19-1601 and Wyo. Stat. § 17-19-1602, statutes requiring financials and other corporate records to be disclosed to owners of the cooperative.[57] Despite his awareness of statutory disclosure requirements, Mr. Rosenthal refused to provide Mr. Loveland with **any** financial information.[58] Specifically, Mr. Loveland asked that he be provided with financial information disclosing the amount of cash on hand and the value of the Cooperative's assets, information that was critical to understanding the transaction.[59] Rosenthal denied the information.[60] As such, the lawyers were complicit and took an active role in the denial of the owners' rights. When it came to providing security over the voting process, Defendant Rosenthal told Joe Campbell that following the bylaws would not be practical.[61]

For his part, Defendant Davidson showed little concern for the rights of the owners. In a June 26, 2014 meeting of board members, Mr. Davidson stated,

---

[56] Exhibit 8 to Aff. J. Campbell; Ex. "B."
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] Aff. J. Campbell ¶23; Ex. "B."

"Well, most members don't really know how much it is worth. They're – they're

satisfied because they don't know."[62]

### (6)   Courts Have the Duty to Void Contracts that Violate Statutes

> Courts have the duty and the power to declare **void** and unenforceable contracts made in **violation** of law or in contravention of the public policy of the state. *Transocean Enterprise, Inc. v. Ingalls Shipbuilding Inc.*, 2009 WL 3030967 (Miss. 2009).
>
> Contracts are **void** as being contrary to public policy when they are clearly contrary to what legislature or judicial decision has declared to be the public policy or when they manifestly tend to injure the public in some way. *First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2015 NMSC-004, 345 P.3d 310 (N.M. 2015).

A contract that violates a **statute** is **void** as a matter of law.[63]  By "void," the

Wyoming Supreme Court holds that a contract that is made in violation of statute

is a nullity, making it ineffective to transfer ownership.  *Anadarko Land Corp. v.*

*Family Tree Corp.,* 2017 WY 24, 389 P.3d 1218, 1223 (2017).  Further, a violation

of the law or the bylaws is a breach of duty for which the fiduciary is held liable.[64]

Application of this principle in Wyoming jurisprudence is lengthy, but the

following examples serve to illustrate the point.  Oil and gas production-related

service contracts that violate the anti-indemnity provisions of the statutes are

---

[62] Exhibit 17, pg. 57-58 to Aff. J. Campbell; Ex. "B."

[63] *See e.g., Takahashi v. Pepper Tank & Contracting Co.*, 58 Wyo. 330 (1942)(An agreement having an illegal object is invalid and will not be enforced applies to contracts of sale, which may be illegal because of its immoral purpose or because it violates some positive law, or is contrary to public policy.  For the same proposition as held by other state courts, *see Transocean Enterprise, Inc. v. Ingalls Shipbuilding Inc.*, 2009 WL 3030967 (Miss. 2009).

[64] *Airgas Inc. v. Air Products*, 8 A.3d 1182, 1188 (Del. 2010); *Harrahs v. JCC Holdings,* 802 A.2d 294, 309 (Del. Ch. 2002); *In Boilermaker Local 154 ret. Fund v. Chevron Corp.*, 73 A.3d 934, 963 (Del. Ch. 2013); Rob Atkinson, Obedience as the Foundation of Fiduciary Duty, 34 J. Corp. L. 43, 57 (2008); *Summers v. Cherokee Children and Family Serv.*, 112 S.W.3d 486, 504 (Tenn. Ct. App. 2002); Duty of Obedience: The Forgotten Duty, Prof. Alan R. Palmiter, Wake Forrest University School of Law 2010.

void.[65] Non-compete contracts that are not limited by length of time and geographically are held to be void and unenforceable as violating public policy.[66] Insurance contracts made in Wyoming that violate statutory requirements are held to be void as against public policy.[67] In short, the general rule, as stated by the Wyoming Supreme Court, is that where public policy is identified in a statute, the contract will not supersede public policy.[68]

To further draw out this principle in the context at issue here, in *Taylor v. AIA Services Corp.*, 151 Idaho 552 (2011), the Idaho Supreme Court declared void a contract approved through a voting procedure not authorized by statute. Even though the stockholders voted to approve the transaction, the court found that the statutory voting procedures had not been followed, and therefore, the contract was illegal, void, and unenforceable.

The Plaintiffs' First Cause of Action requested that the transaction be set aside and that ownership over the Cooperative's assets be restored to the owners. This form of relief stems from breaches of fiduciary duty by violation of statutory mandates, and fraud. Violation of the statutory protections is constructive fraud for which equity will act.[69] Further, a violation of the law or the bylaws is a breach

---

[65] *See Northwinds of Wyo., Inc. v. Phillips Petro. Co.*, 779 P.2d 753 (Wyo. 1989).
[66] *See e.g., Tench v. Weaver*, 374 P.2d 27, 29 (Wyo. 1962).
[67] *See Allstate Ins. Co.*, 672 P.2d at 814-815.
[68] *Id.* at 821.
[69] Constructive fraud can be "fraud in law," or "[i]n equity the term fraud has a wider sense, and includes all acts, omissions of concealments by which one person obtains an advantage against

of duty[70] for which equity can act.[71]   The Plaintiffs' Eleventh Cause of Action alleged the conversion of the owners' interests and asked for equitable relief, as sought by this motion.   The Plaintiff's Seventeenth Cause of Action for constructive trust alleges that the acquiring Defendants wrongfully possess the assets of the Cooperative and have a duty to re-convey the property to the class.[72] In this motion, the constructive trust operates on the basis of the statutory violations in which Defendants BHT and Schlenker have wrongfully taken control over the Cooperative's assets through violations of statute.

### (7)   *Liability of Fiduciaries for statutory violations*

As to the fiduciary duties of the Defendant officer's and Defendant members of the board of directors, the duty of obedience to the law and the bylaws is uncompromising, especially for nonprofit corporations.   A violation of the law or the bylaws is a breach of duty for which the fiduciary is held liable.[73]

---

conscience over another, or which equity or public policy forbids as being to another's prejudice." Black's Law Dictionary, pg. 775 (10th Ed., B. Garner, Ed. 2014). Rescission is a remedy for fraud. *Baylies v. Vanden Boom et al*, 278 P. 551 (Wyo. 1929).

[70] *Airgas Inc. v. Air Products*, 8 A.3d 1182, 1188 (Del. 2010); *Harrahs v. JCC Holdings*, 802 A.2d 294, 309 (Del. Ch. 2002); *In Boilermaker Local 154 ret. Fund v. Chevron Corp.*, 73 A.3d 934, 963 (Del. Ch. 2013); Rob Atkinson, Obedience as the Foundation of Fiduciary Duty, 34 J. Corp. L. 43, 57 (2008); *Summers v. Cherokee Children and Family Serv.*, 112 S.W.3d 486, 504 (Tenn. Ct. App. 2002); Duty of Obedience: The Forgotten Duty, Prof. Alan R. Palmiter, Wake Forrest University School of Law 2010.

[71] For discussions of equitable forfeiture, *see Lingo v. Lingo*, 3 A.3d 241 (Del. 201); *See also Burrow v. Arce*, 997 S.W.2d 229, 237–45 (Tex. 1999).

[72] A constructive trust is imposed by operation of law as an equitable remedy in a situation where there is a wrongful taking of the property of another. *Finkelstein v. Southeast Bank, N.A.*, 490 So.2d 976, 984 (Fla. 4th DCA 1986).

[73] *See* citations in footnote 65, 71, *supra*.

24

# V. CONCLUSION

The Wyoming statutes envision that a cooperative utility could dissolve and sell its assets. The process by which that would be done is carefully prescribed. That is not what happened here. The officer and director Defendants in this case did not seek to dissolve the Cooperative and sell the assets because the persons to whom they deferred (the buyers) did not want to pay for the assets. They simply wanted to extinguish ownership using the owners' own cash and thereby walk away with the company. The law requires that a transaction violating statutes be voided with the assets returned to the owners of the Cooperative. The Plaintiffs ask that the Court order that the Cooperative be reconstituted under the bylaws existing at the time of the takeover with a new board of directors to be elected within 30 days of the date of the Court's order. Damage issues, including the Plaintiffs' claims that profits be disgorged and for punitive damages would be left for trial.

DATED this 18th day of October, 2017.

[Signature Lines On Next Page]

Respectfully submitted,

JOE CAMPBELL, BARBARA CAMPBELL,
   *Plaintiffs*

BY: _____
Drake D. Hill (Wyo. Bar #6-3106)
Hill Law Firm, LLC
2616 Carey Avenue
Cheyenne, Wyoming 82001
(307) 638-9334 (office)
Email: ddhill@hilllawfirm.net
      —*and*—
Robert J. DiLorenzo (Wyo. Bar #6-3316)
Attorney at Law
P.O. Box 27
Emblem, Wyoming 82422
(307) 762-3315

      *Counsel for Plaintiffs*

## CERTIFICATE OF SERICE

This certifies that on this 18th day of October, 2017, a true and accurate copy of the foregoing Motion for Partial Summary Judgment and Memorandum In Support, along with the Rule 56.1 Statement, and two volume set of exhibits was served on the following counsel of record by hand deliver:

John A. Masterson
Alaina M. Stedillie
Welborn Sullivan Meck & Tooley, P.C.
159 N. Wolcott, Suite 220
Casper, WY  82601

David M. Clark
Christopher King
Greear Clark King, P.C.
P.O. Box 552
Worland, Wyoming  82401-0552

James P. Ragain
Ragain & Cook, P.C.
3936 Ave. B, Suite A-2
Billings, Montana  59102

Robert C. Jarosh
Richard Mincer
Hirst & Applegate, LLP
P.O. Box 1083
Cheyenne, Wyoming  82003

Timothy Stubson
Crowley Fleck, PLLP
152 N. Durbin Street
Suite 220
Casper, Wyoming  82601



# Exhibit "E"
## to
# Affidavit of Joe Campbell

STATE OF WYOMING
COUNTY OF PARK

} SS

IN THE DISTRICT COURT
FIFTH JUDICIAL DISTRICT

PATRA LINDENTHAL
Clerk of District Court

FILED SEP 0 5 2017

Clerk

JOE CAMPBELL, BARBARA CAMPBELL,
ON BEHALF OF THEMSELVES AND AS
REPRESENTATIVES OF A CLASS OF
SIMILARLY SITUATED PERSONS,

Plaintiffs,

vs.

CHRIS DAVIDSON, TRI-COUNTY
TELEPHONE ASSOCIATION, INC.,
A WYOMING CORPORATION, DALIN
WINTERS, CLIFFORD ALEXANDER,
J.O. SUTHERLAND, DANIEL GREET,
JOHN K. JOHNSON, NEIL SCHLENKER,
BHT INVESTMENTS, LLC, A
WYOMING LIMITED LIABILITY
COMPANY, BHT HOLDINGS, INC., A
WYOMING CORPORATION, BHT MERGER
CORPORATION, A WYOMING
CORPORATION, HATHAWAY & KUNZ, P.C.,
A WYOMING PROFESSIONAL
CORPORATION, MICHAEL ROSENTHAL,
ESQ., STEVE HARPER, AND DOES 1
THROUGH 99, INCLUSIVE,

Defendants.

Civil No. 28260

## ORDER ON DEFENDANTS' MOTION FOR PROTECTIVE ORDER

THIS MATTER having come before the Court on the motion for protective order filed by Defendants Chris Davidson and Steve Harper, in

1

which the other Defendants to this action have joined, and having considered the responsive pleadings of the Plaintiffs, and having held a hearing on the motion on August 23, 2017, the Court finds as follows:

### FINDINGS OF THE COURT

(1)   The Court approaches the request at issue with the interests of both parties in mind. Among these interests is ensuring full access to discoverable information, openness of the courts, and ensuring that information entitled to protection under the Wyoming Rules of Civil Procedure is accorded the treatment required by the rules. This case is different from most of the civil actions that come before this Court. Even at this stage of the proceedings, the Court must be mindful of the interests of persons who are not yet parties to this case, i.e., the putative class members on whose behalf this case is brought. Even before the issue of whether a class is certified is decided, putative class members have a right to see the source documents that constitute the basis of the Plaintiffs' claims. The balance the Court must achieve is to, on the one hand, ensure the right of all those interested in the case to view discoverable information; and on the other hand, protect the legitimate competitive interests that could be harmed by the broader dissemination of information. This balance is achieved by reconciling the requirements of Rule 23 and Rule 26 of the Wyoming Rules of Civil Procedure and through strict application of the required showings under Rule 26(c) for the confidential treatment of documents.

(2)   Rule 26 of the Wyoming Rules of Civil Procedure envisions an open and efficient discovery process, and one largely self-regulating. As provided by Rule 26, the parties have an interest in a process that ensures efficiency in the discovery process. Even when considering whether information will be treated confidentially, Rule 26(c) requires parties, whenever possible, to resolve the issues of confidentially between themselves without intervention of the court. After the parties have conferred, the Rule 26(c) is structured to operate in the following fashion:

2

(a)     After consultation with the opposing party, under
        W.R.C.P. 26(c) a party from whom discovery is sought
        may move for a protective order that specifies the
        terms and conditions relating to discovery, including
        confidential treatment, when appropriate.

(b)     Rule 26(c)(1)(G) provides that a party may apply for
        confidential treatment of "a trade secret," or other
        "confidential research, development, or commercial
        information." This provision, by its very terms, is
        limited in scope to information that could work
        competitive harm to the company.

(c)     Under Rule 26(c), a party seeking protection of
        information subject to confidentiality, must show good
        cause for the entry of a protective order.

(d)     To obtain confidential treatment of information, a
        party asserting good cause bears the burden to show
        that the information is entitled to protection.

(e)     The party seeking protection must show that specific
        harm will result if no protective order governing
        specific information is granted. *Foltz v. State Farm
        Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir.
        2003).

(f)     Rule 26(c)(1)(G) makes no provision of blanket
        treatment of information and does not allow for the
        treatment of information as confidential that has not
        been shown to be deserving of protection under
        Rule 26(c)(1)(G).

(3)    The Court finds that, in their motion for protective order, the
Defendants have not come forward with any specified documents, nor have the

3

Defendants articulated particularized harm or prejudice pertaining to any specified documents. Simply mentioning a category of documents without any further elaboration or any specific linkage with the documents does not satisfy the burden. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1184 (9th Cir. 2006). The Court further notes that counsel for Defendants Davidson and Harper, in the August 23, 2017 hearing, stated that, by statute, the owners of the Cooperative were entitled to documents.

(4) The Plaintiffs have objected, in part, based on Defendants Schlenker and BHT's response to the Plaintiffs' Motion to Compel in which those Defendants state that "virtually all" of approximately 50,000 documents are subject to confidential treatment. The Plaintiffs have had no opportunity to review the merits of such categorization as the record never disclosed that the Defendants ever revealed to the Plaintiffs what documents the Defendants deem "confidential."

(5) In reconciling the competing interests and in adhering to the requirements of the court rules, and as required by Rule 26(c), in the interest of ensuring fairness to both parties, the Court hereby orders that the parties adhere to the following procedure over documents that one or more party believes warrant protection from specified harm and/or prejudice as a trade secret or are other confidential research, development, or commercial information.

*Conference of the Parties; Parties' Responsibilities*

(6) Applying the mandate of Rule 26(c) that the parties meet and confer before applications for protective orders be filed with the Court, as part of the Court's inherent power to manage discovery in the litigation, the Court reminds the parties that it is the duty of the parties to resolve discovery-related questions before seeking the intervention of the Court. The burden of the questions presented in the instant motion should be placed primarily on the parties themselves rather than requiring the Court to confront the categorization of 50,000 records for confidential treatment.

4

(7)  With these principles in mind, prior to applying to the Court for a protective order, the parties shall meet to review the documents over which confidential treatment is sought and shall confer on whether those documents are appropriate for confidential treatment under the Wyoming Rules of Civil Procedure.  The parties shall confer on and review the following information applied against the following standards:

(a)  the documents over which confidential treatment has been requested;

(b)  the basis of the claims of confidentiality;

(c)  whether, and how, the disclosure of the document would, in practical terms, result in specific prejudice or harm or injury to the requesting party in the absence of a protective order;

(d)  measures that may be agreed upon short of confidential designation of documents and methods that might be taken by agreement to serve both parties' interests; and

(e)  whether the documents over which confidentiality is claimed meet the standards outlined in Paragraph 2 of this Order.

(8)  Exercise of Restraint and Care Restraint In Seeking Protection of Discovery Materials. In addition, the standards set forth in Paragraph 2 and 7 of this Order, each party or non-party seeking protection over information must take care to limit any request to specific material that qualifies under the standards outlined in Paragraph 2 of this Order.  The party seeking protection of materials must seek protection of only those portions of material or documents that qualify for protection, and other portions of material or documents for which protection is not warranted are not characterized as confidential.

A party does not meet its obligation under Rule 26(c) by mere categorization of documents.  For example, this requirement is not met

5

solely on the basis that the document(s) were (i) previously non-public; or (ii) documents were otherwise non-public financial information. A specific showing of prejudice or harm is required for protection. The parties are directed to consider the public interest and the financial interests of the putative class members. Mass, indiscriminate, or routinized designations of protection for financial documents shall be prohibited without a specific showing of prejudice or harm.

(9) <u>Time Limitations.</u> The parties must conclude their required conference and review of requests for confidential treatment within 10 days of the request of the party seeking protection. By written agreement, where the number of documents requires greater time for review, the parties shall extend this deadline to accomplish the intent of the conference requirements of this Order.

(10) Documents provided for review will be utilized for the purposes of conferring only. All documents which both parties agree meet the requirements for protection under Rule 26(c) shall be subject to the confidentiality provisions of this Order.

(11) Mass, indiscriminate, or routinized designations are prohibited. Designations that are unjustified or that have been made for improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expense and burden on the other party) shall not be permitted. The party reviewing requests for confidential treatment of materials or documents shall not deny confidential treatment for improper purposes (e.g., to use as negotiating leverage or to place unnecessary burden and expense on the other party). Agreement as to confidential treatment of some document(s) shall not be construed as a waiver or a concession of argument as to any other documents.

*Procedure for Resolution of Disputes*

(12) Consistent with the self-initiating scope of Rule 26, the Court intends by this Order to place the onus on the parties for resolving as many

6

disputes as possible relating to requests for confidential treatment and to take all reasonable steps to minimize judicial resources for resolving such disputes.

(13)   If the parties are unable to agree upon which documents are deserving of protection under Rule 26(c), the Court shall apply the following procedure to the resolution of such disputes:

(a)  The party requesting protection shall file with the Court the specific documents over which the party seeks protection with identification using Bates Numbers. Such documents shall be made available to the Court for an in-camera inspection. The requesting party shall brief the reasons why it believes that the documents meet the standards for confidential treatment and how the application complies with this Order.   The party requesting protection shall certify to the Court all efforts that have been undertaken to reach a resolution of the request leading up to a determination by the Court.

(b)  The party opposing the protection shall file with the Court argument as to why the documents or material do not qualify for confidential treatment addressing all elements of his Order. The party opposing the protection shall certify to the Court all efforts that have been undertaken with the requesting party to reach a resolution of the request.

(c)  The Court will conduct a review of the application and responses, and shall rule as to whether the documents or material will be treated confidentially.  The Court shall apply the standards outlined in Paragraph 2 of this Order with or without hearing on the requests. The burden of persuasion over requests for confidential treatment shall be on the requesting party. The Court shall note by Bates Number which documents, or portions thereof, shall be treated confidentially. The Court shall issue a simple form of order indicating which documents shall be accorded confidential treatment as meeting the

7

standards set forth in this Order. Any documents not accorded confidential treatment shall not be accorded confidential treatment.

(d)   Unless otherwise ordered by the Court or permitted in writing by the Designating Party, the party producing documents for which confidential treatment has been ordered shall prominently mark the document as "CONFIDENTIAL." The party receiving documents for which confidential treatment has been ordered may disclose confidential information only to (i) the receiving parties; (ii) the receiving party's counsel; (iii) the officers, directors, and employees of the receiving party; (iv) consulting or testifying experts; (v) the Court and its personnel under seal, subject to motion by any party or the Court on its own motion on the basis that the documents should be unsealed as they do not otherwise meet the requirements for sealing court documents; (vi) court reporters and their staff, consultants, or vendors providing litigation services upon assurances of confidential treatment; (vii) the author or recipient of the document; (viii) any person at attendance in depositions;  (ix) potential witnesses; and (x) any mediator agreed to by the parties. The documents for which confidential treatment has been ordered shall be used for prosecuting, defending, or attempting to settle this litigation.

(e)  Nothing in this order shall be construed to affect the use of any document, material, or information at any trial or hearing

(f)  All documents for which confidential treatment has been ordered shall be returned to the disclosing party at the conclusion of the litigation or destroyed. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and

8

consultant and expert work product, even if such materials contain material protected as confidential. Any such archival copies that contain or constitute Protected Material remain subject to this Order

**SO ORDERED.**

DATED this 31st day of August, 2017.

BY THE COURT:

Hon. Norman E. Young
District Judge

STATE OF WYOMING ) SS
COUNTY OF PARK )
I certify that the foregoing is a true copy of the original on file in this office.
Dated SEP 05 2017
PATRA LILJENTHAL
Clerk of District Court
By_____
Deputy

9