

FILED

8:13 am, 4/6/18

Stephan Harris
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| TRI COUNTY TELEPHONE ASSOCIATION, INC., | |
| Plaintiff, | |
| vs. | Case No: 17-CV-89 |
| JOE CAMPBELL and BARBARA CAMPBELL, | |
| Defendants. | |

## ORDER DENYING MOTION TO STAY ACTION

This matter comes before the Court on Defendants' Motion to Stay Action (Doc. 37). The Court has considered the motion and response, and is fully informed in the premises. For the following reasons, Defendants' motion is DENIED.

### BACKGROUND

Plaintiff Tri County Telephone Association, Inc. ("Plaintiff" or "TCT") is a telephone, internet, and wireless services company located in Cody, Wyoming. (Doc. 1 [Compl.] at 3, ¶ 10). Plaintiff provides services to customers in Wyoming and Montana. (*Id.*). Prior to January 1, 2015, Plaintiff was a member-owned co-operative company. (*Id.* at ¶¶ 10–11). However, on January 1, 2015, Plaintiff became a privately owned company and the co-operative's board of directors was dissolved. (*Id.* at ¶¶ 11–12). Defendant Joe Campbell ("Mr. Campbell") was the only board-member who opposed the transition from a member-owned co-operative to a privately owned company. (*Id.* at ¶ 13). Mr. Campbell

was a member of the board of directors from February 24, 2003 until January 1, 2015. (Doc. 1 [Compl.] at 3, ¶ 12).

Almost one year after the sale of the co-operative, on December 28, 2015, Mr. Campbell and his wife, Defendant Barbara Campbell, initiated a lawsuit in Wyoming state court "against the former co-operative, the former executive officers of the co-operative, the corporate attorneys for the co-operative, and certain other parties." (*Id.* at ¶ 14). The lawsuit is currently pending before the District Court for Park County, Wyoming and is styled as a class action. (*Id.* at ¶¶ 14–15).

On May 26, 2017, Plaintiff filed this lawsuit alleging misappropriation of trade secrets, intentional or tortious interference with contract, business expectancy, and prospective economic advantage, violations of the Computer Fraud and Abuse Act, breach of non-disclosure agreement, corporate policies, and resolutions, conversion of laptop and confidential information thereon, and seeking preliminary injunctive relief as to the misappropriation of trade secrets. (*See id.* at 5–7, ¶¶ 21–104). Plaintiff's claims stem from Mr. Campbell's actions after Plaintiff became privately owned. (*See id.* at 3–4, ¶¶ 16–20). Generally, Plaintiff alleges Mr. Campbell "had access to certain information that at the time he received it was confidential, proprietary, or otherwise not public information" and disbursed that information to third parties. (*Id.* at 3, ¶ 16). Additionally, Plaintiff asserts Mr. Campbell was subject to—and is currently subject to—"strict and binding confidentiality obligations" because he was a party to confidentiality and non-disclosure agreements and resolutions. (*Id.* at 3–4, ¶ 17). In support of its claims, Plaintiff alleges Mr. Campbell used his company-issued computer to obtain confidential

information he provided to third parties. (*Id.* at 5–6, ¶¶ 23, 29–30). Specifically, Plaintiff states that upon transitioning into a private company, Mr. Campbell's company-issued laptop was to be returned to Plaintiff to have all of the trade secrets contained on the laptop removed. (*Id.* at 5, ¶ 22). Plaintiff claims that "[i]nstead of complying with the board directive, Joe Campbell kept the company-issued laptop and TCT's trade secrets thereon, including TCT's trade secrets spanning his entire time as a board member for TCT." (*Id.* at 5, ¶ 23). On July 19, 2017, the Court dismissed without prejudice Plaintiff's first cause of action for misappropriation of trade secrets under 18 U.S.C. § 1836. (Doc. 14).

## DISCUSSION

Defendants argue the Court should stay this case pending the outcome of the state court proceedings. (Doc. 37 at 2). To justify staying this action, Defendants assert the Court should apply one or more abstention doctrines. Specifically, Defendants argue the Court should stay proceedings under the *Thibodaux* abstention doctrine, the *Burford* abstention doctrine, and/or the *Colorado River* abstention doctrine. Defendants' arguments are based on the premise that if the state court finds the sale of the co-operative violated Wyoming statutes, then it is void, and Plaintiff "has no authority to be acting as Tri-County Telephone Association, Inc. . . . and the purported Plaintiff is unlawfully in possession of the assets of the cooperative utility." (*Id.* at 7). Defendants contend that if the state court voids the sale, then Plaintiff does not have authority to sue under the name Tri-County Telephone Association, Inc. (*Id.*).

Plaintiff contends the Court would abuse its discretion if it stayed the case based on an abstention doctrine. Focusing on the *Colorado River* doctrine, Plaintiff argues the state court action and this action are not parallel because the claims are different.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959). "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 188–89.

*Thibodaux Abstention*

Defendants contend the Court should stay this action based on the *Thibodaux* abstention doctrine. The *Thibodaux* abstention doctrine applies when the case involves an issue that "is of a special and peculiar nature." *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959). In *Thibodaux*, the city initiated eminent domain proceedings in state court to take Louisiana Power & Light's land, buildings, and equipment. *Id.* at 25. Louisiana Power & Light removed the case to federal court based on diversity jurisdiction. *Id.* The district court abstained from deciding the case and stayed the case pending the state supreme court's interpretation of the statute that the government relied on to take the property. *Id.* at 26. The *Thibodaux* court found that the

4

district court properly abstained from deciding an issue involving eminent domain because the "special and peculiar nature" of eminent domain actions. *Id.* at 28. The *Thibodaux* court found that the nature of eminent domain "is intimately involved with [the government's] sovereign prerogative." *Id.*

Here, Defendants have not shown how this case involves an issue of such a special and peculiar nature that the Court should exercise abstention under *Thibodaux*. Defendants argue this is the first time a cooperative utility has been converted to a for-profit entity and the issue before the state court is whether such action is permissible under the Wyoming statutes. However, Defendants fail to show how the issues in this case are so special and peculiar in nature that they are intimately involved with the State's sovereign prerogative.

As such, the Court finds the Motion to Stay the Action under the *Thibodaux* abstention doctrine is DENIED.

*Burford* **Abstention**

Additionally, Defendants argue the Court should abstain under the *Burford* abstention doctrine.

The *Burford* abstention doctrine counsels that:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Western Ins. Co. v. A. & H. Ins., Inc.*, 784 F.3d 725, 727 (10th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans (NOPSI)*, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (internal quotation marks omitted)). Under *Burford*, the concern is "with protecting state administrative processes from undue federal interference." *NOPSI*, 491 U.S. at 362. A case implicates *Burford* when it involves a "complex regulatory scheme of 'paramount local concern and a matter which demands local administrative expertise . . . .'" *Id.*

Defendants argue "[t]he class action pending in state court will address whether a cooperative utility may be taken over and converted into a for-profit entity . . . . Wyoming statutes expressly bar the conversion of a cooperative utility into a for-profit entity. Bar the extinguishment of membership interests if not allowed by the bylaws, and place strict protections on voting . . . . These questions . . . subsume the Plaintiff's complaint . . . ." (Doc. 37 at 4). Additionally, Defendants argue the *Burford* abstention doctrine applies because "[t]here literally has *never* been a takeover of a cooperative utility in Wyoming prior to the transaction at issue in the state court action. What is permissible, and what is not permissible under state statutes must be left to the state courts." (*Id.* at 5).

Defendants' arguments for *Burford* abstention are not persuasive. Defendants claim the Court must stay the case because the state court must consider what is permissible under the Wyoming statutes. However, Plaintiffs do not ask the Court to make determinations about Wyoming statutes regarding the sale of a non-profit utility. Rather, Plaintiff's claims stem from Defendants' alleged dissemination of Plaintiff's

proprietary information and trade secrets on Mr. Campbell's website and in the state court action. Defendants have not shown how an adjudication of those issues will disrupt the state court's ability to establish a coherent policy about the sale of non-profit utilities. Plaintiff's claims also do not present difficult questions of state law, as Plaintiff has stated several federal and state law claims and Defendants have not shown how the state law claims bear on policy problems of substantial public import whose importance transcend the result of this case.

As such, the Court finds Defendants' Motion to Stay the Action under the *Burford* abstention doctrine is DENIED.

### *Colorado River Abstention*

Finally, Defendants argue the Court should stay the case based on the *Colorado River* abstention doctrine. "The *Colorado River* doctrine applies to 'situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state and federal courts.'" *Fox v. Maulding*, 16 F.3d. 1079, 1080 (10th Cir. 1994) (quoting *Colorado River*, 424 U.S. at 817). "The doctrine permits a federal court to dismiss or stay a federal action in deference to pending parallel state court proceedings, based on 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (quoting *Colorado River*, 424 U.S. at 817) (alteration omitted).

The United States Supreme Court has recognized three general categories where abstention is appropriate. Specifically, "[a]bstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by

a state court determination of pertinent state law"; "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; and "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings." *Colorado River*, 424 U.S. at 815–16 (citations and internal quotation marks omitted).

The Tenth Circuit has recognized that in narrow instances, federal courts can dismiss or stay suits where parallel state court proceedings exist in order to advance judicial administration. *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d. 1223, 1233 (10th Cir. 2013). Yet, in most circumstances "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *Id.* (quoting *Colorado River*, 424 U.S. at 817). The Court would abuse its discretion in dismissing or staying a proceeding unless the state court proceedings would "be an adequate vehicle for the complete and prompt resolution of the issue between the parties." *Fox*, 16 F.3d. at 1081 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 28 (1983)). Under the *Colorado River* doctrine, the Court "must first determine whether the state and federal proceedings are parallel." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (citation and quotation marks omitted). To determine if the state and federal proceedings are parallel, the Court must "examine the state proceedings as *they actually exist* . . . ." *Id.*

If the Court finds the proceedings are parallel, then it considers the following factors to determine whether to stay the suit: (1) "simultaneous jurisdiction over a single res;" (2) "the relative convenience of the fora;" (3) "order in which proceedings were initiated;" and (4) "the need to avoid piecemeal litigation." *Reinhardt v. Kelly*, 164 F.3d. 1296, 1303 (10th Cir. 1999) (citing *Colorado River*, 424 U.S. at 819). No factor alone is determinative, but the "need to avoid piecemeal litigation" weighs most heavily on the Court's analysis. *D.A. Osguthorpe Family P'ship*, 705 F.3d. at 1234.

Here, Defendants filed suit "against the former co-operative, the newly private TCT, the investors and owners of TCT, the former board members of the co-operative, and certain other parties." (Doc. 1 [Compl.] at 3, ¶ 14). The suit is pending before the District Court for Park County, Wyoming and is styled as a class action. (*Id.* at ¶¶ 14–15). Defendants claim the two suits are parallel proceedings because if the state court finds the transaction violated state statutes, then the sale of TCT is void, and Plaintiff has no authority to sue as TCT nor does it have any right to the co-operative's information found on the laptop. Plaintiff argues the proceedings are not parallel as the state action does not provide recovery to Plaintiff for Mr. Campbell's alleged misappropriation of its computers or data, and the current action does not address the validity of the sale of TCT.

In the state court action, Defendants' claims relate to the sale of TCT from a member-owned cooperative to a privately-owned company. Plaintiff asserts that Mr. Campbell's state court claims include fraud, violations of company bylaws, breach of fiduciary duties, civil conspiracy, legal malpractice, conversion, constructive trust and waste of assets. In this case, Plaintiffs' claims include intentional or tortious interference

with a contract and business expectancy, intentional or tortious interference with an economic advantage, violations of the Computer Fraud and Abuse Act, breach of a non-disclosure agreement, corporate policies and resolutions, and conversion. (Doc. 1 [Compl.]).

While, here, Plaintiffs claims are based on Defendant Joe Campbell's actions after he was no longer a TCT board member. Plaintiff contends "regardless of whether Defendants prevail in the purported class action challenging the sale, Defendant Campbell injured the company by his violations of federal and state law when he misappropriated the company computer and company data." (Doc. 40 at 6). Plaintiff contends the legality of the sale does not bear on the Cooperative and Tri County's duty to their members to enforce the laws and agreements that Mr. Campbell violated. (*Id.*). Thus, while the claims in each case arise out of a similar time period involving TCT, the state court action involves the sale of TCT, while the action before this Court is based on Joe Campbell's actions after his board membership ceased and TCT became privately owned. Specifically, Plaintiffs allege TCT issued its board members laptops and when TCT became private, Mr. Campbell distributed to third parties TCT's proprietary information and data found on the laptop. (Doc. 14 at 2–3). Despite the validity of the sale, Plaintiff's claims relate to Mr. Campbell's violations of agreements and laws related to his alleged dissemination of TCT's proprietary information.

Thus, while the parties in this case and the state court action are the same, the issues in each action are different. Defendants have not shown how a decision in the state action will provide complete and prompt resolution of Plaintiff's claims against Mr.

Campbell. Therefore, the state court action and this action are not parallel proceedings. As such, the *Colorado River* doctrine does not apply.

The Court finds that Defendants' Motion to Stay the Action under the *Colorado River* abstention doctrine is DENIED.

## Conclusion

The Court finds a stay of the case under the *Thibodaux* abstention doctrine, the *Burford* abstention doctrine, or the *Colorado River* abstention doctrine is improper.

IT IS ORDERED the Court finds Defendant's Motion to Stay Action (Doc. 37) is DENIED.

Dated this __5th__ day of April, 2018.

*Nancy D Freudenthal*
NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE